### DAVIS' vs. PREVOST'S HEIRS.—12 *Martin*, 445.

Whether the vendee can recover land, which the vendor, before the sale, has sworn to belong to the person in possession?

APPEAL from the court of the fifth district.

*J. .S Johnston*, for the defendants. The legal principles upon which this case depends, have been discussed with ability by two learned counsel, and most of the points of law and evidence adjudged by the court in the case of *Prevost's* vs. *Johnston's heirs.* 9 *Martin*, 123.

Taking the law as it has been settled, and the evidence as it is acknowledged to be, I shall present only such considerations as have not been drawn into the argument, and endeavour to pin the attention of the court upon the points on which the case now depends.

It is not contended then, that the plaintiffs,

or any person, under whom they pretend to claim, have ever actually occupied or cultivated the land. They have had merely a civil or constructive possession under their title. Their grant is dated in 1777 : since which they have made no claim, nor exercised any right of ownership over it.

It is true that Lessassïer actually cultivated the land in indigo, on the west side, in 1776, and continued on the land until 1780, at which time Macarty entered, and remained upon the land, until 1785 or 1786. He made a way across the bayou, cut the wood, made a clearing, and one year had corn on the east side. It then remained unoccupied until Loisel entered, under the sale from Macarty's heirs to Prevost, who has been in possession ever aince. The land in dispute lies opposite the improvement, where Lessassier and Macarty lived, and included the clearing made on the east side.

We must be quieted, unless they shew a betten legal title—which they cannot. 1st Because their title has been virtually released to the defendants. 2d. Because it has been lost by prescription.

If the present plaintiffs have any right, it is

derived from the recognitive act. This is merely confirmatory of the primordial title, and conveys no new right. It is evidence of the enumerations it contains; to wit: That the grantees had sold and conveyed all their right to La Houssaie. The heirs could sell no right, unless they inherited from the ancestor. They did not inherit from him, because he, by a judicial confession, has acknowledged a relinquishment of his title.

The board of commissioners was established by act of congress, to hear and determine upon the rights of individuals to lands, according to law. It was a court of record, with a limited jurisdiction. This board received written notices of claims; took evidence in writing, subscribed by witnesses, in the form of depositions; kept a record of its proceedings, by a clerk; and adjudged the rights of the parties— it was essentially a court. Before this tribunal the heirs of Macarty presented their claim to this land. There was a difficulty then, which is yet felt, in shewing title. The lapse of time, the death of witnesses, the conflagration of his house, the loss of papers, and, above all, there were existing grants on the land, to which La Houssaie had the legal title. They appealed to

the integrity of La Houssaie, the only person having an adverse right—and, perhaps, the only one acquainted with the transactions. He, with a noble disinterestedness, declared in writing, and under oath, " That he knows of Col. Macarty having purchased of Vincent Lessassier 80 arpents of land front, with the depth of 40 arpents on each side of the Bayou Teche ; and that he, the said Lessassier, purchased the same of four other persons, and was bounded above and below, on said bayou, by lands of Madame Loisel.

He proves also the settlement and cultivation by Lessassier and Macarty, and has been known to *him*, and *generaliy*, as the property of Col. Macarty. That the government refused to re-grant the land, although often solicited ; and that the taxes were always paid by Col. Macarty, up to the time of the sale to Prevost." The heirs of Macarty called upon La Houssaie to acknowledge or deny their title. It was in substance tendering him the decisory oath ; and he recognised their title ; and, in effect, acknowledged that whatever right he had under the grantees, had, in some way not necessary to explain, ceased, to the benefit of the claimant.

This declaration stands in the place of a re-cognitive act, and confirms our title. It makes all things plain. It supports a presumption, created by forty years' abandonment. It cor-roborates the acknowledgment of Herbert, that Macarty had acquired the land in some way. It corresponds with the general understanding of the country. It accounts for their continued claim; the occupation of both sides of the Teche; the surveying of 80 arpents on both sides; and the payment of taxes during many years, before the change of government. It ve-rifies the oath and recognitive act of Madame Lessassier.

Lands were of little value under the Spanish government. Titles were obtained without much difficulty or expense, and surrendered without ceremony. Sometimes, by the tolera-tion and usage of the country, removed from one place to another; often exchanged or re-linquished to others, as suited their interest or caprice; and among a people, few of whom could read or write, and of whom it may with truth be said, that integrity and good faith had almost superceded the necessity of law. These transactions were often informally and negli-gently made.

It is impossible, in the nature of things, to explain every occurrence, and prove every act. After a lapse of thirty years, the law wisely presumes title.—Time supplies the place. It is not surprising that a sale should be lost, an exchange mislaid, or a chain of conveyance interrupted ; and that after a length of time it should be forgotten by all but the immediate parties ; and this has actually happened to the plaintiffs also. In the absence, then, of all law, and upon general principles of equity alone, the heirs of La Houssaie should not be heard to deny the truth, or the force of this declaration.

West'n District
*Sept.* 1823
DAVIS
*vs.*
PREVOST'S H'RS

This avowal, made upon due notice, with great circumspection and solemnity, is, at least, not inferior to an act under private signature, which would convey or relinquish the title: One is a private, the other public, and of record. One is merely declaratory ; the other has the sanction of an oath. One stands alone ; the other is verified, by long acquiescence on one side, and continued claim on the other. But take from this tribunal its judicial attributes, and from the oath its legal sanctity, it would then stand as a *written confession*, but made in a proceeding of great public notoriety, and with great circumspection.

West'n District
Sept. 1823.

DANIS
vs.
PREVOST'S H'RS

*La confession de celui à qui on impute un fait est un preuve suffisante en matiere civile, lorsqu'elle est faite dans les formes requises.*

*La confession se fait ou en jugement ou hors jugement. La confession judiciaire libre et simple faite en jugement par la partie même ou par son fondé de pouvoir est une preuve suffisante. A l'égard de l'aveu fait hors jugement, ou il est ecrit ou il ne l'est pas ; dans le prémièr cas, il fait preuve complété contre son auteur; dans le seeond cas, comme il ne peut étre établi que par temoins, il ne peut avoir d'effet que dans le cas ou la preuve testimoniale est permise. Ferriere, Dic. De Droit, vol. 4, p. 542,* word " *Preuve.'*

The same law is found in all the French authorities, and in the *Partidas, & Civil Code.*

The plaintiffs cannot deny what is contained in their recognitive act, to wit : that they had full knowledge that their ancestors, the grantees, had, in the year 1787 made an exchange with La Houssaie père, by which he acquired from the grantees the land at *Chicot Noir* ; and as no sale is now shewn from him, the title must have continued in him, until his death. La Houssaie and Macarty were then adverse claimants ; and the only claimants to the land.

The avowal of La Houssaie is full proof between him and Macarty and their *ayant causes.* The present plaintiffs hold, by a private act, from the heirs of La Houssaie. The evidence is therefore equally conclusive between them and those who hold under Macarty and his heirs, or *ayant causes.*

This confession of La Houssaie is either a judicial or a written confession; and in either case, is full proof between the parties, of what it contains; and they cannot evade the effect of any sale, or title, or confession, which he may have made.

The confession of La Houssaie was made in writing; subscribed by him before a parish judge; and is therefore equal to a notarial act, if it is not equivalent to a sale. But it was taken under oath, before the judge of the parish of St. Martin, by virtue of a dedimus from the board of commissioners, to be read in a case then pending before them in relation to the title of Macarty. It is therefore a judicial confession. It is made in a public office; and the same where the plaintiff's sale was executed. It was taken, and deposited, in the office of the register of lands; the most public office in the district, in relation to lands. It is duly certi-

VOL. I (N. S.)     83

fied by the judge, in the usual form of depositions, and a sworn copy of the register, filed in this cause. (Certified copies from the register's office have heretofore been held good.)

An exception was taken to it in the court below, that it *was ex parte.* This is not parole evidence taken by deposition in the cause, by a dedimus from this court, in which notice would be required. It is a copy of an act, which the law makes evidence; as a copy of any judicial proceeding, or writing is evidence.

There is an absurdity in the idea, as well as confusion in the mind, that a man's confession can be *ex parte,* as relates to himself and his heirs and assigns.—He is himself the party. There is no other objection, to the confession in the bill of exceptions. It is authenticated, as all other depositions; and that no doubt might remain in a question of so much interest to the defendants, they caused a copy to be furnished under the oath of the register, before a justice of the peace. It is evidence as a confession: and it is evidence as a deposition. The deposition of a deceased person taken on a petition to the general assembly of Connecticut (who were called on to exercise a judicial power) between the same parties, and relative

to the same point now at issue, will be received in evidence. 1 *Root,* 81. *Ray* vs. *Rush.* A party will be admitted to prove to a jury by a witness what a person deceased has sworn before commissioners appointed for a special purpose, by the legislature of Maryland. *Howell's Lessee* vs. *Tilder.* 1 *Hen. & Mun.* 48. Evidence of what deceased persons have declared, is good ; much more their written evidence.

"An *Onondago commissioner* (in New York) will be a competent witness to prove what persons deceased swore before the commissioners, in relation to a dispute about the title between the same parties." 2 *John. Rep.* 17. *Porter* vs. *Bailey.*

The only doubt here was as to the propriety of receiving parol evidence. But there was no doubt as to evidence taken before commissioners. What was admitted in a former suit *between those whose interest is now represented* in the present suit, by the parties, will be received in evidence. *Fitch* vs. *Hyde, Kirby,* 258. Evidence of what a deceased witness has sworn on a former trial between the same parties admissible. *Peake's Evid* 39, *note.* 1 *Strange,* 162. *Pelten* vs. *Nelter.* 2 *Lord Raym.* 1166.

West'n District
Sept. 1823.

DAVIS
vs.
PREVOST'S H'RS

The deposition taken in chancery is good. 2 *P. Williams*, 863. *Coke* vs. *Farindle* "The declarations of a person in possession of land, as to his title, are admissible evidence against him, and all persons claiming under him." 4 *John. Rep.* 230. *Jackson & al.* vs. *Bard.*

In the case of *Andrew's lessee* vs. *Fleming*, 3 *Dall.* 93, it was held, that a conversation between the husband of the defendant, under whom she held possession, and Collindar, under whom the plaintiff claimed, was admissible evidence.

Under particular circumstances *parol evidence* of *continued* possession on the part of the grantor, and the *grantee's acknowledgment of his right*, may be given in evidence, for the jury to presume against a deed, that the grantee has relinquished or re-conveyed his right. 1 *Henning & Munford*, 53, *Brigg's adm.* vs. *Alderson.*

It is too plain to multiply authorities. The confession is full proof of what it contains. It acknowledges with the force of a recognitive act, and with the solemnity of the decisory oath ; and they are each of a dignity equal to an act under private signature, and full evidence between the parties and those who

claim under them; if not evidence against their persons. .

In this case, the property was of great value. The question propounded to Macarty was of the greatest moment to the fortunes of those concerned. The proposition is distinct, certain, and definite ; the mind of La Houssaie was fully awakened to the subject, and apprised of all the consequences. The answer is full and precise, That " the *land claimed*, to wit, eighty arpents front on both sides of the Teche, at Chicot Noir, *was the property of the late J. B. Macarty.*" The inference is perfect, that it dd not belong to La Houssaie. But the recognitive act proves, that at a period anterior, it had belonged to him ; he must have known the fact, and had in his mind a distinct knowledge of the transaction, by which his title had been transferred to us ; whether by sale or exchange. The declarant had a perfect knowledge of all the facts ; and perhaps no man was ever called on to decide a question of greater interest or delicacy, in relation to himself. He had a legal title under the grantees : our title was lost ; and we had no means of proving its loss or its contents ; and we had no remedy, but by appealing to the conscience of the party.

If confession is ever evidence, it is so here: from necessity, as well as' for the purposes of justice. If we had foreseen this collusion between his heirs and the plaintiffs, we should have taken his evidence, *De bene esse.* If he had lived, and his integrity had yielded to the temptation which this speculation holds out, we should have availed ourselves of his answers to interrogatories : we should have faced him with his own avowal—and could he have denied his declaration ?

If in the sale of Macarty's heirs to Prevost, La Houssaie had written, "I have always considered the land sold, as the property of the vendor," this would be a virtual relinquishment of his title ? If he had written the same at the foot of a mortgage, he would be estopped from urging a, claim against the rights of the mortgagee. The curator and executor are both bound by an inventory. An express acquiescence of a party in a sale or mortgage, will, in the courts of chancery, postpone the claims of the party, to those which he seems to recognize by not declaring himself. All these belong to a class of cases, founded upon obvious principles of natural justice, that the mind recognises as soon as perceived. The

courts of England and the United States have
uniformly sustained them. Is it not equally
binding, when executed publicly in an office,
subscribed and sworn to? Can it lose its effect, by the form, or mode, or place of execution?

This declaration was notice to all claimants
under Macarty that La Houssaie had no title.
It would have been an open *violation of faith,*
truth, and honor, if he had afterwards brought
this suit, or sold any right to these lands.

But he never asserted any claim to it afterwards. He did not sell it. He died. The
heirs succeeded to his rights; and no more.
If he did not die possessed, the heirs could not
inherit. They therefore had no right; and
could sell none. La Houssaie could not recover these lands;—can his heirs do what the
ancestor could not? Or create a higher title in
their vendees than they had themselves?

They claim in the same right, with all the
equity, and encumbered with all the conditions. If La Houssaie could not hold, or recover this land, he could not have disposed of
it by will. If he had no right to will it, the law
could not entitle them to inherit it.

There was but one mode by which our

rights could have been impaired or weakened; and that was, by a sale by public act; which, under the laws of the state, might have prevailed over our title; and that, perhaps, would have depended upon the purchaser's knowledge of our title and possession.

This declaration is good against him; and is equivalent to an act under private signature. Let us pursue the analogy.

A sale under private signature, conveys all the right: The party acquires a legal title, which justifies his possession. The vendor has nothing left which he can sell, without committing fraud upon one or both of the parties. But having legally divested himself of all title as well as the possession, he dies. He transmits nothing to his heirs; and this sale is binding upon them; and is good against creditors.

A mortgage under private signature, is a legal mode of securing the payment of a debt. It may be defeated by a mortgage or sale by public act. Yet if the mortgagor dies without defeating it, the private mortgage remains a good security upon the property against all simple creditors; and is binding on the heirs. So a confession is proof against him and his heirs. It is not good against those, who pur-

chase from him, by *public act,* in *good faith,*
without *notice.* But if he dies without making
su< h act, then it being full proof against him, it
is full proof against his heirs, as it must be
against all those who buy from them. If the
law is not thus construed, a private sale, or
mortgage, or judicial confession, will have no
effect but during the life time of the party,
even if he acts with good faith. If the heirs
may defeat the estate created, by selling by
public act. If they can defeat it, they may do
it with full notice, fraudulently and even col-
lusively with the purchaser.

But upon general principles of justice, be-
tween men acting honestly, is it just, that a
purchaser by priv te act, for a good considera-
tion, in *possession,* should be dispossessed by
heirs, whose ancestor received the price ; sup-
posing them to sell even to an innocent pur-
chaser ?

It is better that he should be bound to know
of whom he buys, what title they have, and
who is in possession.—That they should *take
care.*

But when we contemplate the abuse of this
right, the frauds it will legalize, the villainies
it will encourage, the confusion of property,

VOL. I. (N. S.) 84

and ruin of individuals that will follow ; the principle is too dangerous and revolting.

But if the heir finds another in possession, is that not notice to him ? and can he, with good faith, sell what he finds in the possession of another, under the belief that he is the true owner ? and can the purchaser appeal to the laws to protect him ? He knows, at least, that the property is in dispute ; that he buys a lawsuit ; that there is an adverse right ; and that he must turn out of possession a *bona fide* holder.

Is he the innocent purchaser the law was made to secure ? He is put on his guard ; he knows the danger ; he runs the risk ; and at least buys only the haul of the net—the hope. But, on the other hand, the holder has no means of protecting himself. He ascertains there is no prior title ; obtains possession ; and has the consent of all parties ; but he cannot guard himself against subsequent speculations of heirs, or fraudulent combinations to deprive him of his property.

It is alleged that the plaintiffs have a legal title from the heirs of La Houssaie, acquired by public act. That they are third persons ; and innocent purchasers, without notice. While

West'n District.
Sept. 1823.

DAVIS
vs.
PREVOST'S H'RS

the confession of La Houssaie is only good evidence against him, his heirs and assigns.

I reply, 1st. The plaintiffs have not produced a *publie act made authentic, duly recorded* in the parish where the land lies. It lies in the parish of St. Marie. The sales are made in the parish of St. Martin ; and do not appear to be recorded. They are not, therefore, public acts. If both sales are private, the prior has preference. *Merlin, Questions de Droit, (Tiers.)* We had possession. If the titles were equal, the possession must prevail.

2d. They are not third persons, but *ayant causes* of La Houssaie and his heirs. They have only a private sale of the heirs conveying a *naked right.*

3d. They had notice of our adverse possession ; and are not innocent purchasers.

An act of the legislature has provided, that all sales, mortgages, and liens, which dispose of, or encumber, real property, shall be made by public act, and duly recorded in the parish where the property lies, or it shall not be good against third persons. The object of this law is to proteet third persons and innocent purchasers from private, clandestine, and fraudulent sales and mortgages. The act must re-

West'n District ceive such construction as will meet the reason
Sept. 1823. and intention of the statute ; as will repress
DAVIS the mischief, and advance the remedy ; and
vs. such interpretation as it ought to have stand-
PREVOST'S H'RS ing with other laws on the same subject.

"An act under private signature, has, be-
tween those who have subscribed ▪▪ and their
heirs and assigns, (*ayant cause*,) the same cre-
dit as an authentic act." *Code*, 306, *ar.* 224.
It is not then necessary to record an act, for
the benefit or protection of heirs or assigns.
They are bound by what the ancestor has done
by private act. Heirs and assigns are not
therefore third persons in the contemplation of
law. The want of registering cannot be plead-
ed by any one of the contracting parties, their
heirs or assigns. *Id. art.* 228.

An act under private signature has no date
against third persons, but from the day it is
enregistered, or from the day of the death of
those who have subscribed it. *Droit Français*,
*art.* 1328. From this it would seem, that death
consummated the act; and as it regards his
heirs, the act becomes authentic. That conse-
quently they cannot afterwards sell to another
what the ancestor has legally sold.

I will not contend here, as Toullier has

done, in commenting upon this part of the code in France, that *ayant causes* means all persons that hold under the same common title, or from the same source.

But I will adopt the other construction, that *ayant causes* here only implies those who hold under the same identical act.

Third persons then are all those who have not signed the act, and who are not their heirs, or who do not hold under them by that act.

It results still, that heirs are now third persons ; and that consequently, a private act, or written confession, is binding on them, and their *ayant causes,* though not against third persons.

Again, the object of this recording is to give notice. But if the party has knowledge of the prior sale, he has notice ; and under a similar law in England, and all these states, it has been uniformly held, that notice dispenses with the registry ; because he is not an innocent purchaser. In this case we shew an adverse possession. The purchaser knew he was buying of heirs, who had only a naked right ; and they were bound to know, that any private act of the ancestor, would be valid against the public act of the heir.

West'n District
Sept. 1823.

Davis
vs.
Prevost's h'rs

By the Roman law, the heir to an inestate, who died before his entry to the inheritance, did not transmit his right to the heirs. So that he did not acquire the inheritance but by his entry to it. 2 *Domat.* 577. case Q. (*note.*)

Again, The seller, to inspire good faith, or to convey a perfect title, ought to join the right of property to the possession.

☞ It is stated by Judge Kent, 9 *John.* 58. *Jackson* vs. *Dermont.* "That it is a well settled principle of law, that if a person out of possession conveys to a stranger land held adversely by another, the conveyance is void ; so that the stranger cannot maintain an action upon it." "The principle is conformable to the whole genius of the common law." "It was the fundamental law of feuds, on the continent of Europe." Voet says, "Delivery is still necessary in Holland and Germany, to the transfer of real property."—"It is, no doubt, the general sense and usage of mankind, that the transfer of real property should not be valid, unless the grantor had the capacity as well as the intention to deliver the possession ; and actually does it." Blackssome says, "It prevails in the codes of all well governed nations; for possession is an essential part of the title

and dominion over property." 2 *Comment.* 311, 12.

" Where a *bona fide* purchaser of land enters under his deed, and continues in open possession of it, a second purchaser cannot avail himself of the first purchaser's neglect to register his deed;" because, as the whole object of the registry is, to give notice, and as there are circumstances within the knowledge of the second purchaser, *as strong as the registry of the deed*, to satisfy him of a previous conveyance, his purchase will be deemed fraudulent against the first purchaser; and he will not reap the fruits of his own iniquity." (*J. Parker*,) 6 *Massachusetts Reports*, 487, *Davis* vs. *Blunt*.

Every civilized country had a similar law. Indeed it is essential to the well being of society. But it will be useful to see what construction has been given to it by enlightened men, for the purpose of restraining fraud, and attaining the ends of justice.

There is an able reading of this statute by Judge Trowbridge, (*Supt. to vol. 3, Mass.Rep.*) in which it is laid down, that possession is necessary to enable the party to sell; and that an adverse possession is good notice to a subsequent purchaser.

DAVIS
ve.
PREVOST'S H'RS

" The registry is designed to give notice, in order to prevent purchasers being imposed upon by prior conveyances; which they are in no danger of when they have notice." " Possession and visible improvement of land, is such evidence of the alterations of the property, as will amount to implied notice thereof." " No fair purchaser is, in such case, in danger of being defrauded, if he uses the caution he ought to do." " The purchase of an estate, with express or implied notice of the prier conveyance is fraudulent." 1 *Burr.* 474. *Mansfield.*

It is said, in the case of *Davis* vs. *Blunt, vol. 6, Mass. Rep.* " No case can be stronger than the present, to shew the *reasonableness and necessity of such a construction of the statute.* Here the creditor assists in the sale of the land, by attesting the deed; lives in sight of the expensive improvements making by the purchaser; sees him in the daily occupation of his estate; and still, knowing of an inadvertence, he treacherously attempts to turn it to account, by seizing the property into his own hands, made valnab.e by the labor and money of the man he had ensnared.—If he could prevail, great would be the reproach of th law. " But our wise and learned predecessors have for a

long succession of years establishes a doctrine which totally defeats a fraud of this sort."

It is clear that where a vendor sells to two persons, that a fraud must be committed against one, or both. The object of the law is to prevent the fraud, and to protect the innocent. If A. sells to B. and retains the possession, and then sells to C, A. has committed a fraud; but B. has enabled him to impose on C, and ought therefore to suffer.

But if B. was in possession, C. would have notice, and would therefore buy with his eyes open. The recording of his deed, with knowledge of the adverse possession, would not entitle him to recover the possession A. held by a private act, much less could he recover, having only a private sale himself. *Pothier, traité de Vente, 331. art. 317.*

*" Lorsque le vendeur n'est pas lui même en possession de la chose qu'il vend, il est evident qu'il ne peut faire aucune tradition réelle ou feinte de cette chose. Car, la tradition étant* datio possessionis, *le vendeur qui n'a pas lui même la possession de la chose qu'il vend, ne peut la donner à l'acheteur;* nemo dat quod non habet. *Il ne peut en ce cas que subroger l'acheteur au droit qu'il a de revendiquer la chose : La de-*

*mande que donne l'acheteur en consequence de cette* subrogation *; ne le saisit que du droit de revendiquer, et non de la chose revendiquée, qui lui a été vendue ; ce n'est que le delais qui lui est fait sur cette demande, qui le saisit de cette chose et qui lui en fait acquérir la propriété, en lui en faisant passer la possession." page 332, . Traté de Vente, art. 317. Le contrat de vente ne peut pas produire par lui même cet effet, les contrats ne peuvent que former, des engngements personels entre les contractans; ce n'est que la* tradition *qui se fait en consequence du contrat qui peut transferer la propriété de la chose qui a fait l'objet du contrât ; suivant cet regle* traditionibus, non nudis conventionibus dominia transferuntur. I refer also to *art.* 319.

In the *Traité du dróit de Propriété, vol.* 1, *p.* 283, *art.* 286, *" Regulierement, cette action n'appartient qu'a celui qui a le domaine de propriété, de la chose revendequée et ne peut étre intenté que par lui.* In rem actio competit ci qui aut jure gentium aut jure civili dominium acquisivit.

In France, a lessee cannot be dispossesed by virtue of a public sale. See *Merlin, vol.* 6, *(tiers.)* And it has been held in this court, that a verbal lease, with possession, was good against a written one.

West'n District
Sept. 1823.

DAVIS
vs.
PREVOST'S H'RS

I might avail myself of the construction of the words *ayant cause,* which has given rise to an animated discussion in France. But, as that would defeat the end of the law, which properly understood, will be found to contribute, in a high degree, to the security of property, I adopt the most limited definition of the expression. I conclude that heirs and those who hold in their right are not third persons. That a private sale, or written or judicial acknowledgment, is good between the parties, their *heirs* and *assigns.* And that, consequently, a sale from La Houssaie's heirs, conveys only the naked right, which he had, by a previous act released to us. *Nemo dat quod non habet. Possession* is necessary to *delivery,* as *delivery* is to a *sale.* Adverse possession then implies a defective title; and is therefore notice in law of a prior conveyance.

*Notice* is equivalent to *registry.* Adverse possession being notice to third persons; they are not innocent purchasers; and, consequently, not entitled to the favor or protection of the law.

This construction has been given by men of great experience, conversant with the affairs of men, and awakened by all the arts and sub-

tleties, and combinations, by which the wary and the watchful surprise the innocent and overreach the ignorant.

In this case, then, La Houssaie has made an acknowledgment, which operates in law as an act of confirmation of our right, and a release of his own title. He dies; and his act, which before could not operate against third persons, is consummated. The heirs find us in possession, and sell to the present plaintiffs; and now they claim as third persons—innocent purchasers—surprised by our dormant title! They purchased with their eyes open. They prevail upon the heirs of La Houssaie to violate their good faith; to sell a speculative right—an expectancy: living in the country, in the face of our possessions; with a full knowledge of all the facts; and by a private title too!!

They purchase to be sure, not technically a *litigious* right, but what is worse, a *law suit— not pending*; but what, in point of morals, is more odious, a right to stir up litigations—and they are entitled to all the credit that results from the difference, by shewing that theirs is not a *litigious* right.—And these are the innocent purchasers: third persons without notice, in whose favor the equity of the court is invoked.

We are in possession, in good faith, with the consent and acknowledgment of the adverse party; with no view to speculation; but for actual cultivation. And now, what is the court required to do for the protection of those innocent parties?—To revive an obsolete title, dug up from the archives, where it has been forty years dead and buried; to turn us out of possession, older than their title; which has continued longer than theirs has been forgotten.—In fine, to make a most extensive injury and wide ruin upon the warrantors.

2d. The defendants have acquired a right
    by prescription.

The law of our code is taken from the law of France; which does not differ from the civil law, which was adopted in the laws of Spain.

Any title with good faith, and ten years public possession, or thirty years without title or good faith, acquires a good title.

The recognitive act of Mad. Lessassier, in 1804, is a good basis of prescription for ten years. It was such a title as made the party believe in his conscience that he had a title. It matters not who had the legal title; or whether she had any; or whether it is good as a recog-

West'n District nitive act.   It is sufficient that it purports to
Sept. 1823.
be a sale of eighty arpents on both sides of the
Davis
vs.
Teche.   More than ten years have elapsed
Prevost's n'rs from 1804 to the commencement of the suit.

Possession of any part of a title, is possession
of the whole.   It remains then only to shew
possession.   There was a continued posses-
sion by Lessassier, from 1776 to 1780, in which
last year Macarty took actual possession, and
occupied it until 1785 or 6.   This is confessed
by La Houssaie.   He then had a natural pos-
session of the land ; which continued in him
until interrupted by an adverse possession of
the same kind, which adverse possession was
never taken.   After that he had the land sur-
veyed ; paid taxes regularly, under the Spanish
government ; sold the land to Prevost, who
again went into actual possession, and thereby
united the present with the former possession ;
and the law considers them to have been al-
ways in possession.   The recognitive act shews,
that Macarty was not a trespasser, or a squat-
ter, even if the parol evidence is excluded.   But
the possession of Macarty began more than 30
years ago.   After 30 years, the law presumes
title and good faith.

We cannot, therefore, question the founda-

tion of his title. He therefore had a good title from the beginning, which with the *possession*, continued without interruption. In 1804 he was in the natural possession, by operation of law. He then acquired another title, confirmatory of the first. His natural possession has continued ever since. He has then had ten years possession, under a good title, and in good faith. The title and the possession are established by the confession of La Houssaie.

But the recognitive act, dispenses with the production of the original title, if it relates its tenor, *Code* 308, *art.* 237, and supplies its place.

It is good evidence that the title and the possession, were in the beginning legal and in good faith, for eighty arpents on both sides.

It is therefore a good basis of prescription of thirty years; and the possession is established by evidence. The recognitive act of Madame Lessassier, if not good for the heirs, (who do not appear dissatisfied,) is at least good for half, which justly belonged to her in the community. But can it be said, that a title of forty years standing, cannot be recognised even by oath, between the parties and their heirs, when lost; when by the effect of time only, we are

West'n District
Sept. 1823.

DAVIS
vs.
PREVOST'S H'RSdispensed from shewing title, or of proving it ;
when the acknowledgments of the party would
be good ; and when the conversations of dead
men are given in evidence ?

Here the object of the sale is, merely to shew
the *quantity of the land* held ; not to establish
a title—which is presumed.

Parol evidence, and conversation, are good
proof of boundaries : Why not of quantity and
extent ?   But La Houssaie acknowledges our
boundaries on both sides of the bayou.  Recog-
nitive acts, whether they relate the tenor or the
substance of the primordial title " *Interrompent
bien la prescription. Ferriere Dic. de Droit.*

It is confessed by La Houssaie, that we pur-
chased of Lessassier eighty arpents on each side
of the Teche ; and had possession from 1776
until that time.   It has been established by
unquestionable evidence, that we purchased
eighty arpents front, on both sides of the
Teche.

This has in effect been acknowledged by the
only person having an adverse interest.   It is
confirmed by the written act, and the oath, of
those who hold the rights of our vendor.   We
have shewn continued occupation.   That we
took possession by actually surveying eighty

arpents. That we paid the taxes regularly. We shew that on the west side, there was no wood; and that the east side was necessary to us. It was the usage of the country to hold on both sides. One had no value without both. We made ways to cross the bayou, cut our wood, and even made corn one year on the east side. But we have not produced our title. It would be wonderful, if it had survived 40 years, under the circumstances of the country and the habits of the people.

We have shewn that Macarty's house was destroyed, with all personal property and papers, with a portion of the city of New Orleans.

By the French law, the conflagration of a house, a ship-wreck, a robbery, are events that suffice to prove the loss of papers, because the loss is rendered probable by the event. Why is a party held by such strict rules to shew his title? It is because its being withheld is a presumption that its suppression is beneficial. But here is the declaration of Macarty, many years ago, before there could be any expectation of this suit, that the title was lost; when no person claimed; when the land was of little value; and when it was easy to renew his title. Is not the destruction of his house evidence of

West'n District
Sept. 1823.

DAVIS
vs.
PREVOST'S H'RS

the loss of his papers?  This is corroborated
by his declaration; and above all, he cannot
prove it, in the nature of things, in any other
mode.  If this is not good evidence, you must
not only shew a fortuitous event or *force ma-
jeure*, but you must shew, that the particular
paper was lost.  If this could be proven, it
would be only by an eye witness; and this
must rest upon the credit of a witness, who is
not more credible than the witnesses who at-
test the existence of our title.  The law must
have a reasonable and sensible construction, or
it will exclude all evidence of the loss of pa-
pers, and render the law nugatory.  We must
relax the rule in proving the loss, but increase
the strictness in proving the contents—as the
court have done in the case of *Nagel* vs. *Minot.*
7 & 8 *Martin.*

Judice deposes to a public sale of forty ar-
pents.  This is clearly not the sale mentioned
by the other witnesses, and does not contradict
their testimony; it merely shews that we had
two.  Judice is not necessarily mistaken; both
are true and reconcileable.

We have satisfactorily shewn, that the title
was lost; but Macarty did not, at that time,
recollect this paper.  But afterwards, when

searching for it, it was discovered to be lost.—
He could not, after such a lapse of time, (16
years,) recollect, that this paper was among
his private papers in his house when burnt.—
But it occurred to him that it might have been
deposited in Pedesclaux's office; and not find-
ing it there, he petitioned the intendant; and
stated it had been mislaid. If he had intended
any fraud or concealment, it was sufficient, and
much more easy, to have stated that the paper
was lost, at the time his house and papers
were destroyed. But not knowing the fact
distinctly, and having an impression on his
mind that it had been left in the office, and
that, as it could not be found, he thought it
must have been *mislaid.*

The existence of a sale for this land has been
proven by the testimony of too many and too
respectable witnesses to be doubted. It is
corroborated by his possession, his survey, his
declaration, his payment of taxes, his continued
claim, and the general understanding of the
country; and above all, by the oath and recog-
nitive act of Madame Lessassier, and the oath
and confession of La Houssaie himself. If all
this evidence is true, he can have no motive to
withhold this sale. If it is untrue, and we can

West'n District be deceived by such a mass of testimony, it is
Sept. 1823.
in vain to rely upon any evidence, to prove the
Davis
vs.                 loss of the title.
Prevost's h'rs

There is a strong presumption of the loss of
the sale, as it is of the highest importance to
him to produce it. The loss of the house ac-
counts for the loss of the paper. It creates an
irresistible presumption that it was lost then;
although not distinctly recollected. But if it
was true, that the paper was deposited in the
office, and mislaid, he is equally entitled to
prove the loss, and the contents of the deed.

It was enough for Macarty's heirs here to
prove the conflagration. That meets the views
of the legislators in France. The presumption
arising from this event is full proof of the loss.
But the defendants were desirous of doing
more; they desired also to shew, that the loss
had been known before any suits were antici-
pated.

In the petition to the intendant, the loss was
the material fact; the manner was unimport-
ant. Does not the declaration, so many years
before this suit, strongly support the presump-
tion of loss? And can a mistake or inadver-
tence, arising from the memory of a simple
fact, many years after the loss, destroy the full

proof? Suppose the paper lost in the public
office, which may happen, and there is no for- tuitous event, is there no remedy? Must he be
held to prove a *force majeure*, when none was applied? a fortuitous event, when none has happened——and that it was unforeseen? Papers are rarely lost by an *event* : they are more frequently mislaid, or dropt, or misplaced, or stolen—at what time, place, or manner, is entirely unknown.

It may never occur again in this state, that the loss of a paper can be accounted for according to the terms of the law. I have lost important papers, that I cannot account for. I have known them taken from the records of a court ; nobody could tell how or when—and yet, is such strictness to prevail that my rights must be lost, unless my house has been burned, or I have been robbed or shipwrecked? The liberal relaxation of the rule, in the case of *Nagel* vs. *Minot*, (8 *Martin*,) will be found necessary, to give a salutary effect to the law. It is quite as easy to prove the fotuitous event, as to prove the contents of a deed : and those who design to accomplish their fraudulent purposes by perjury, will evade with ease, the provisions of the law—while every honest man

West'n District
Sept. 1823.

DAVIS
vs.
PREVOST'S n'RS

in the community will be the victim. Let it appear, by the best evidence the case admits of, that the paper is lost; but require strictly the evidence of the contents. Here I may be permitted to add, that after forty years, the deed proves itself. It is therefore easier to make a false sale than to prove the contents by witnesses. A deed of forty years old depends more on the possession which accompanies it, than the possession does upon the deed. It is not even necessary to prove that the signatures are genuine. In this case the evidence of the existence of the sale from Lessassier to Macarty, and the contents, are more satisfactorily established than it would be by the deed itself.

I conclude that the loss of this sale is accounted for; that its contents are duly proven. That Lessassier had eighty arpents on both sides of the Teche; that he had an actual possession, from 1776 to 1785 or 6; that the natural possessson continued until the defendants entered; that we have had forty years possession, and therefore have a right to hold by prescription.

*Bullard,* for the plaintiffs. In my argument in this case at a former term, I was willing to

take the appellees at their word, and to sup-
pose, that no conveyance ever existed from the
original grantees to De la Houssaie, pére. I
was disposed to concede, for the sake of argu-
ment, that it was all an error; and on that sup-
position, endeavored to shew that our rights
would be incontestible. But we are now to d,
that we must not gainsay our own deed; that
we must hold by the recognitive title, purely
as such, or not at all.—Be it so. Permit me
then to inquire into the nature and effects of
such acts.

Much learning has been exhibited, to shew
the difference between recognitive acts, *in cer-
tâ scientiâ*, and those in *formâ communi*. The
former are said to dispense with the production
of the primordial title: the latter to confirm it,
only so far as it may have existed.—Such is
the doctrine of Pothier, and such the provi-
sions of our code. By this I understand no-
thing more than, that when I demand the per-
formance of a stipulation from the obligor, and
in support of my claim, I furnish no other
proof than a recognitive title in *formâ communi*,
he may deny the existence of the primordial
title; and I must then produce it, or account
for it. But if the act should be *in certâ sci-*

*entid*, and sets forth the tenor of the primordial title, it amounts to full proof; and I need not produce the original. But how do these principles apply here? If the heirs of the grantees were in possession of the land, and we had demanded to be put in possession, by v rtue of this act, they might well say, " here is an error of fact; produce the primordial title; we have since discovered that none such exists." But here the contrast is consummated. The heirs of Davis are to the whole world the successors by particular title of the grantees. There is no dispute about it. Third persons cannot contest the fact.

Supposing then de la Houssaie père, the owner in his lifetime, how is his declaration before the land commissioners to operate? This brings us to the point on which this cause is supposed to hinge.

We contend that it ought not to have been allowed in evidence. 1st. Because its authenticity is established only by an *ex parte* affidavit. 2d. Because it purports to be a copy of a deposition, and is not proved according to law. See *Phillips's Evid. p.* 292. The *existence* of the original document is proved by one person who was not called as a witness; its genuine-

ness is not established at all. The *jurat* to the original appears to be certified by R. Eastin, who must consequently have seen it signed—he is not called as a witness. Mr. Wailes could have known nothing of it, except through the return to the dedimus. The admission of that document was excepted to; and we are entitled to all legal objections, in this court.

Admitting that it was properly given in evidence, how does it affect the rights of the parties? It is treated as a confession, which will preclude him and his successors from claiming the land. By one of the counsel it is considered as judicial; by another as extrajudicial. It is clearly not a judicial confession, as it was not made by a party *en jugement.* The land commissioners may be a court; but De la Houssaie was only a *witness.* If it be entitled to the name of a confession, it is evidently extrajudicial, and consequently, is not in itself conclusive, *even against the party making it.* See *Merlin Rep. verbo Confession.*

But I consider it *parole.* Its being noted down, does not make it written evidence. The testimony of a witness, taken on commission, does not become more or other than testimonial proof. If he, as a witness, could not

Vol. 1 (n. s.)　　87

establish title to real estate, it is difficult to conceive how he could do more by having his testimony written down by a commissioner? If this declaration was considered at first as testimonial, it is still so: It was so considered by the commissioners, and the claim was *rejected.*

It is said by the counsel for the appellees, to be at least equal to an act *under private signature,* containing an express *relinquishment* of title in favor of Macarty, not recorded. I am always happy to take the gentlemen at their word. And let us, for the sake of argument, consider it as such, in express terms. It is admitted to be null, as to third persons, unless recorded. The heirs of Davis, whose ancestor purchased without any notice of that act or declaration, who purchased in good faith, are third persons, and innocent purchasers, and consequently not excluded by it. The provisions of our code are explicit on the subject. *Civil Code,* 306, *art.* 224–8.

It must seem that if De la Houssaie himself had sold to Davis by authentic act, he would have taken in preference to a previous purchaser by private act not enregistered according to law. It is not pretended that he would be prejudiced by a previous clandestine sale.

But the act, (says the gentleman,) would be

conclusive against the heirs ; and as they inherited nothing, they could sell nothing ; and consequently, although according to their argument, the heirs may be ignorant of the private sale, as well as a subsequent purchaser from them by authentic act, the previous private sale by the ancestor would prevail, and be conclusive against the vendee of the heirs.

It is difficult to see how the two cases can be distinguished in principle. If A. sells to B. by act *sous seing privé*, he has nothing left to sell to C. by authentic act ; and he can sell no more than he has. Yet it is admitted, (Toullier notwithstanding,) that C. would hold. But the heir of A. must be entirely ignorant of the previous sale of his ancestor, and sell in good faith; shall C. not be protected ? It is said not ; because the first *sale, sous seing privé,* is conclusive against heirs.—Not more so, I should suppose. than against the party himself. And if a good title could be acquired from him, acting basely and fraudulently, it is difficult to conceive why it could not from the heir, who acted in good faith. In both cases C. is equally a stranger, a third person, as relates to the first purchaser, and to the act *sous seing privé.* The

West'n District
Sept. 1823.

Davis
vs.
Prevost's R'rs

heir is seized, by the death of the ancestor; he is considered by the whole world as the owner of the estate. If he does not avail himself of the benefit of inventory, he is personally liable for the debts. The property he inherits is blended with his own; and is as much his, as if he had acquired it by purchase.

Suppose a private mortgage by the ancestor, not recorded; the heir in possession of the hereditary estate, mortgages it to another, by authentic act; which mortgage would take the precedence? The first would be a valid mortgage as to the heir; he cannot contest it; but it shall not take precedence of the second, because the second mortgagee was ignorant of its existence; was a stranger to the act, though he held under the heir, against whom that act is said to be conclusive. With respect to the first mortgage, he is a third person. 6 *Merlin, Questions de droit, p.* 388. *verbo Tiers.*

But it is said, we had notice of the adverse possession; and are not innocent purchasers. It is true we are accused of acts of trespass committed on the land, under a pretended claim of Lessassier, which had been rejected by the commissioners. It is true, we expected to contend against wealth, and local influence;

the ingenuity and learning of distinguished advocates. It is true, we supposed the adverse party would cling to this cause to the last ; and that the struggle would be protracted, expensive, and vexatious. But we had no suspicion all this time, that they claimed under our vendors, or their ancestor. It is but recently they have made the discovery themselves. Nothing is said of it in the pleadings. And last year, a long and learned argument was furnished to the court, to prove that De la Houssaie, whose title they now pretend to hold, never had any right at all. On application to the land office, we were assured that no title existed out of the domain, except in favor of Dugats and Labauve. That the pretended title of Macarty was founded on parole evidence ; and was rejected. We had a right therefore to consider Macarty as a trespasser on the grantees, or a squatter on public land. Shall he now be permitted to change the character of his own possession ?

But the counsel asks of the court to establish constructive notice, in lieu of that demanded by the statute ; and many decisions are referred to in which judges considered, that notice by registry may be dispensed with in particu-

lar cases. The equitable powers of these judges may have authorised them to change or abrogate particular provisions of positive law. But if this court pursue uniformly the same rule of construction ; they will say, " we cannot disregard the letter of the statute, under pretence of pursuing its spirit." We cannot substitute one species of notice for another ; we cannot say that notice can be dispensed with in particular cases, on equitable grounds. At any rate, this is not one of the cases in which even those judges would have decided so ; because those who claim under Macarty never pretended to have derived any right through De la Houssaie ; but, on the contrary, have uniformly, constantly, pertinaciously denied any right, title, or interest in De la Houssaie, or those under whom we hold. Take the rule as laid down by Judge Parker, (6 *Mass.* 487,) referred to by the counsel : " Where a *bonâ fide* purchaser of land enters *under his deed*, and continues in open possession of it, a second purchaser cannot avail himself of the first purchaser's neglect to register his deed." In the case before the court, did they enter under the declaration of De la Houssaie? Have they not, on the contrary, disclaimed any pretence

of the kind; and persisted in an exploded and unfounded claim of Lessassier?

On the second branch of the case, to wit, the plea of prescription, I have little to add in reply to the arguments urged by the adverse counsel. It is most evident that the appellees cannot connect their possession with that of Lessassier; and make out a prescription of thirty years. Our grants are dated in 1777, and the commandant certifies, that he had put the grantees in possession of the land. Any possession adverse to his, was a trespass. There is no legal evidence of any title in Lessassier; and his possession, such as it was, extremely equivocal, was abandoned, and in law the grantees were still considered possessed.

The principles of law on which the question of thirty years' prescription must be determined, have been settled by this court, in the case of *Prevost's heirs* vs. *Johnson,* 9 *Martin,* 183.

On the ten years prescription, it appears to me, that the appellees have but feeble hopes. The recognitive act of Madame Lessassier is not *translatif de propriété,* and therefore cannot form the basis of ten years prescription. Even if it might be so considered, the evidence

shews possession under it on the west side of the bayou, for only five or six years before the institution of this suit.

To conclude, (for I feel that I have troubled the court too long, on a subject which has been so fully discussed,) I have endeavoured to shew :—

1st. That the declaration of De la Houssaie ought not to have been received in evidence ; not because it is in itself *ex parte*, but because its existence and authenticity is proved only by an *ex parte* affidavit.

2d. That it is to be considered only as parole, and not therefore admissible to establish or destroy title to real estate. 6 *Johnson's Rep.* 19.

And 3d. That if it is to be regarded as a written disavowal on the part of De la Houssaie, it is a private paper, not recorded, and not conclusive on us as third persons.

Having shewn a title of the highest dignity out of the crown, and deduced a chain of conveyances from the original grantees, we are entitled to recover, unless the defendants can shew a better title ; that ours has accrued to their benefit ; or that we have lost it in the lapse of years.

It being suggested that facts which the record left doubtful, might be fully established, by remanding the case for a new trial, it was, by consent, accordingly so done.

West'n District
*Sept.* 1823.

DAVIS
*vs.*
PREVOST'S H'RS

\*\*\* *There was not any case determined in either of the months of October or November.*