## HALE *vs.* SMITH.

Where *M* had conveyed goods to *C*, who afterwards sold them to *H*; it was *held*, in a suit between *H* and the creditors of *M*, who attached the goods as his,— that the declarations of *C*, made two months before the sale from *M* to him, were admissible in evidence to impeach the consideration of the former conveyance.

The vendor of goods as his own, being therefore bound to warrant the title, is inadmissible as a witness for his vendee, in an action touching the title of the same goods; being directly interested to establish the title, for the purpose of protecting himself from all accountability on his implied warranty.

The account-books of an interested witness are inadmissible evidence.

THIS was an action of replevin of five horses and certain furniture, chair and cabinet stock, &c.; brought by *John Hale* against *James Smith*, a deputy sheriff; who pleaded property in one *March*; against whom he held certain precepts, on which he had attached the property in question. The issue was upon the property in the plaintiff.

At the trial before *Parris J.* the plaintiff read in evidence a bill of sale dated *Jan.* 21, 1829, by which *March* conveyed the property in question to *John B. Cross* and *John K. Hale*; and a further conveyance on the back of the same instrument, dated on the following day, by which these vendees did " grant, assign and set over" the same property to the plaintiff.

The defendant offered evidence tending to prove that the conveyance by *March* to *Cross* and *John K. Hale* was without consideration, and not *bona fide*, but made for the purpose of hindering, delaying and defrauding the creditors of *March*.

It appeared that *Cross & Hale*, the vendees of *March*, were commission merchants and auctioneers in copartnership; that *March* was a manufacturer of household furniture; that for some months previous to *Jan.* 21, 1829, he had consigned to them for sale large quantities of furniture, and had received from them in return, at various times, since *May* 1828, cash and supplies for his establishment.

The plaintiff contended that a balance of about eight hundred dol-

Hale *v.* Smith.

lars was due from *March* to the firm of *Cross & Hale*, at the time of the original conveyance to them, and formed part of the consideration. The defendant insisted that nothing was due, and that the conveyance was collusive, to defeat creditors. And for the purpose of showing that *March* was not so indebted to *Cross & Hale*, the defendant, in addition to other evidence, offered to prove the declarations of *Cross*, made in *November* 1828, in a conversation with the witness, in which he stated the amount of property they had then received of *March*, observing that they had sent some to *New York* for sale, and expected soon to be in funds for him to the amount of four hundred dollars; and that he was desirous that the whole proceeds of *March's* factory should be turned into their establishment. To the admission of this testimony the plaintiff objected; but the judge permitted it to go to the jury.

To rebut the testimony offered by the defendant, and to prove the validity of the sale by *March* to *Cross & Hale*, the plaintiff offered *Cross* as a witness; but the judge ruled that he was inadmissible. The plaintiff then offered the books of *Cross & Hale* for the same purpose; but these also the judge rejected; it appearing that checks had been given by *March*, from time to time as he happened to be in town, for all their advancements; which checks were produced at the trial, and were said by the plaintiffs to correspond with the entries on the books.

The jury returned a verdict for the defendant; which was taken subject to the opinion of the court upon the admissibility of the declarations of *Cross*, and of the testimony rejected.

*Greenleaf* and *Neal*, for the plaintiff, contended that the declarations of *Cross* should not have been received, because he himself was a competent witness. They were not the declarations of the fraudulent grantor, nor relative to any conveyance made, or to be made. On the contrary they were uttered months before any conveyance appears to have been contemplated by the parties; and therefore are not within the principle of *Bridge v. Eggleston,* 14 *Mass.* 245, which is thought to go to the verge of settled rules. Nor do they go to impeach the conveyance to the plaintiff; but are offered to

53

show that a prior sale, to which he was not a party, and of which he does not appear to have been conusant, was invalid.

But *Cross* himself should have been admitted. The vendor is always a good witness, to affirm or disaffirm a sale by himself, in a suit between third persons. 3 *Stark. Ev.* 1648, 1659, 1661 ; 4 *Taunt.* 19 ; 1 *Stra.* 445 ; 5 *Johns. Ch.* 29, 79. And he was not interested in the event of the suit. The verdict could not be evidence for or against him in another suit. If the plaintiff should fail here, and should sue him on any supposed warranty, the whole case would be open for him to defend ; and if the plaintiff was conusant of any fraud, without proof of which the present defendant cannot succeed, then manifestly *Cross* would not be liable over, the parties being *in pari.* But here was no warranty of title by *Cross.* His conveyance imports no covenant ; *Stearns,* 126 ; for the whole contract is in writing, and no warranty is expressed. *Burgess v. Lane,* 3 *Greenl.* 169. And if here is an implied warranty in the one conveyance, there is also in the other, from *March* ; upon which *Cross* would have his remedy over.

The books also should have been admitted, as part of the *res gesta,* to show that the checks were not a subsequent fabrication, as was pretended at the trial.

*Longfellow,* for the defendant, cited *Bridge v. Eggleston,* 14 *Mass.* 245.

MELLEN C. J. delivered the opinion of the Court at the adjournment in *August* following.

According to the facts reported, the only question was whether the sale from *March* to *Cross* and *John K. Hale* was fair and honest, and for a valuable consideration, or a fraudulent one, made with intent to defraud the creditors of *March.* If that sale was valid, nothing appears to impeach the second sale, from *Cross* and *J. K. Hale* to the plaintiff ; though, as the jury have returned their verdict in favor of the defendant, they must have found the first sale fraudulent, and the plaintiff conusant of the fraud. If the decisions of the judge were correct as to the admission of proof of *Cross's*

declarations, and also as to the rejection of *Cross*, when offered as a witness, judgment is to be rendered on the verdict.

On the whole we think the proof of *Cross's* declarations was properly admitted, in connexion with other evidence, as tending to show that no valuable consideration was paid by *Cross* and *J. K. Hale* to *March*, for the property in question.   In the case before us, *Cross* appears in the character of a vendee and a vendor of this property,; and the declarations proved were made a short time before the purchase from *March*.   It is true that in *Bridge v. Eggleston*, the declarations given in evidence were those of a grantor before, the sale, to show the fraudulent intent with which it was made ; though it seemed he might have been admitted as a witness.   This was so decided, on the ground that the law would not compel a creditor, in such circumstances, to resort to the testimony of a party to the fraud, for the purpose of proving it.   It is evident that the above case differs from the present, in which the declarations proved were those of a *vendee* respecting facts having a tendency to show the nature, weakness and defects of his own title.   It seems stronger than the case of *Bridge v. Eggleston* ; for if a vendee's title may be affected, and perhaps defeated, by the declarations of a vendor before or at the time of sale, it would appear at least equally clear that it may be impaired or defeated by his own declarations ; especially when such vendee is the person under whom the plaintiff claims, and who conveyed the property in dispute to him with warranty.   In *Jackson v. Bard*, 4 *Johns.* 230, it appeared that one *Smith* purchased the land in dispute of *Dickenson*, and afterwards conveyed the same to *Linzey*, who conveyed to the tenant; and the court decided that the declarations of *Smith*, respecting his title and the execution of his title deed, made before his conveyance to *Linzey*, and while he himself was in possession, were admissible in evidence against the tenant.   *Thompson J.* says, " These declarations would have been good against *Smith*, and are also competent evidence against all who claim under him. This principle has been repeatedly recognized, both in our own and the English courts." And he cites 1 *Johns.* 343 ; 1 *Esp. Ca.* 458 ; and 2 *D. & E.* 53.   In *Binney v. Proprietors of common lands in Hull*, 5 *Pick.* 503, the declarations of the ancestor were admitted

---

---

to prove his liability to maintain a certain fence, and thus to prove the liability of the heir to maintain it.　So in *Ivat v. Finch & al.* 1 *Taunt.* 141, the question was whether Mrs. *Watson* was the owner of certain personal property, (which the defendant had seized for the lord of the manor,) at the time of her death.　The plaintiff was permitted to prove by her declarations that she had transferred it to the plaintiff.　The court say, " The admission was against her interest, and ought to be received, because the right of the lord of the manor depended on her title."　See also *Davis v. Spooner*, 3 *Pick.* 284.

The next inquiry is whether *Cross* was properly rejected.　He and *J. K. Hale* were the vendors in the sale to the plaintiff; and it is a well settled principle of law that where a person sells a personal chattel as his own property, he is understood to warrant the title.　1 *Ld. Raym.* 593; 1 *Salk.* 210; 2 *Kent's Com.* 574; 3 *Stark. Ev.* 1661, 1662.　Nothing appears in the case showing any defect in the plaintiff's title, except the want of title in *Cross* and *J. K. Hale*, at the time of their transfer to him.　Hence, we perceive, it was an essential point with the plaintiff, on the trial, to establish a title in *Cross* and *J. K. Hale*; and *Cross* was directly interested to establish it, for the purpose of protecting himself from all accountability on his implied warranty.　On this principle he was inadmissible; and, for the same reason, his books also were properly rejected.

*Judgment on the verdict.*