Brinkerhoff, J.
This was an action of ejectment, brought by
the defendants in error, against the plaintiff in error, in the common pleas of Guernsey county, and appealed from thence to the district court of that county, where the plaintiffs helow had a ver • diet and judgment, to reverse which this petition in error is prosecuted.
From the record, there appears the following state of facts:
Frederick Vernon, being entitled to land from the government of the United States for revolutionary services, died in 1795, or 1796. Six or seven years after his death — to wit, in 1802, a patent for the land in controversy was issued from the United States in his name. On the 20th of May, 1836, an act of Congress was-passed, providing that, “ in all cases where patents for public lands have been, or may hereafter be issued, in pursuance of any law of the United States, to a person who had died, or who shall hereafter die, before the date of such patent, the title to the land designated therein shall inure to and become vested in the heirs, devisees, or assignees of such deceased patentee, as if the patent had issued to the deceased person during his life.” U. S. Land Laws (part 1), 540.
In 1848, the heirs of Frederick Vernon, deceased, conveyed to-the lessors of the plaintiff below, and in 1849, they commenced the action below. It does not appear that Vernon or his heirs were ever in actual possession of the land in controversy. Such is the title of the plaintiffs below.
The defendant below gave in evidence, but solely for the purpose *of showing the nature and extent of his possession and claim, a tax deed executed in 1824, to one McCullough, under whom he claims, and proved a continuous actual possession of the land by himself and his grantors from thence until the commencement *261 of the suit, being more than twenty-one years, and relies upon the «statute of limitations.
It is clear that the patent which, in 1802, issued in the name of Frederick Yernon, was a nullity. “To enable the government or any individual to grant any title or interest, either legal or equitable, the person designated in the conveyance must be in esse to fake. The one can not lose the title or interest until the other takes it; which is impossible where the grantee is dead.” Price v. Johnson, 1 Ohio St. 397. Until the act of Congress of May 20, 1836, gave vitality and operation to the patent, the title to the land in controversy remained in the government of the United States; and up to that date the heirs of Yernon had no actual possession, ■and no title on the basis of which they could obtain possession. And from that time until the commencement of the suit below, ■twenty-one years had not elapsed. The statute of limitations could not run against the government; nor could the land, while both the legal and equitable title remained in the government, be legally •subjected to taxation and sale for taxes. And the record does not show that any equitable title to this land ever passed from the government to Frederick Yernon, in his lifetime.
It is contended, on the part of the plaintiff in error, however, that by the provisions of the act of Congress referred to, and also by the principles of the common law applicable to like cases, the patent, having been vitalized by the act of Congress, must be held to relate back and take effect from the time of its date and issue, in such manner as to subject the land designated in it to the operation of the statute of limitations after the date of the patent, and before the passage of the act 'of Congress, as well as afterward.
We are unable to concur in this view of the case, for the following reasons:
1. Such could never have been the intention of Congress, in ^the passage of the act, and would be contrary to its policy. That policy was to benefit the heirs of persons to whom grants of land had been due, and to whom such grants had been attempted to be made, and not to mock them with an act pretending to legalize such attempted grants, while subjecting the lands granted to arbitrary forfeitures, which no degree of diligence on the part of the heirs could avert. Let us look for a moment at the consequences •of the doctrine contended for by the plaintiff in error. The pat *262 ent was issued and dated in 1802. Suppose now that the plaintiff in error, or those under whom he claims, had taken possession of this land in 1803.' From that time until 1836, when the act of Congress giving vitality to the patent was passed, is thirty-three years and thus, if the doctrine for which the plaintiff in error contends is to prevail, it is apparent that the heirs of Yernon would have been barred by the statute of limitations twelve years before they had a title on which they could maintain an action for the recovery of this land.
2. The common-law doctrine of relation does not properly apply to this case. The doctrine itself is but a legal fiction, and, like other legal fictions, was invented to enable courts to arrive at conclusions which would-do justice, and at the same time preserve the semblance of logical consistency. They were invented for the advancement of justice, and will be applied for no other purpose. Case v. De Goes et al., 3 Caines, 262, 263; Jackson v. Bard, 4 Johns. 234. While, therefore, had the heirs of Yernon assigned their claim te this land prior to the passage of the act of 1836, the doctrine of relation might be applied, in favor of the assignee, to save his rights and do justice; yet it ought not to be so applied as to deprive those heirs of all benefit from the bounty or the justice of the government, when they have been guilty of no laches of which the law takes notice. We know of no exception to the rule, that where a legal fiction would work injustice, courts will refuse to recognize it. “In fictione juris semper aequitas existit.” Broom’s Legal Maxims, 90, et seq.
3. The defendant below did not make a case which comes within the letter of the statute of limitations. The tenor of that statute is to the effect, that actions of ejectment, etc., shall be ^brought within twenty-one years “ after the cause of such action shall have accrued.” Now, as no cause of action had accrued to the heirs of Yernon until after the act of Congress gave effect to the patent which was previously void, and as they commenced their action within twenty-one years thereafter, it is plain that the letter of the statute does not bar them. Nor,
4. Does its reason or policy. Statutes of limitations proceed on the presumption, from lapse of time, of a release of rights, or the presumption of their abandonment from laches; and hence they carefully except from their operation persons under disability. And neither the presumption of release nor abandonment can arise *263 against persons who, for want of legal right, conld be guilty of no laches, and to whom no degree of vigilance or diligence could be of any avail.

Judgment affirmed.

Bartley, C. J., and Swan, Scott, and Sutlikf, JJ., concurred.