Where *A.* went into possession of land under an agreement made with *B.* for the purchase; and *C.* afterwards took possession under an agreement with *A.* for the purchase, the possession of *C.* was held not to be adverse to the title of *B.*

A *feme covert* who had executed a deed with her husband, was held a competent witness to prove that the deed had been antedated.

The declarations of a person in the possession of land as to his title, are admissible evidence against him, and all persons claiming under him.

A deed may in its operation be made to relate back to the time of the contract for the purchase of the land, as between the same parties, and for the furtherance of justice, but not so as to do wrong to strangers.

JACKSON, *ex dem.* GRISWOLD and another, *against* BARD.

THIS was an action of ejectment for land in *Philips-town*, in the county of *Dutchess.* The cause was tried at the *Dutchess* circuit, before Mr. Justice *Van Ness*, in *September*, 1808.

The plaintiff gave in evidence a mortgage from *Samuel Dickenson* to *Roger Barton*, dated the 8th *March*, 1779, for 160 acres of land, including the premises in question, being one quarter of an acre, made to secure the payment of 865 dollars, in two years.

*R. Barton*, the mortgagee, was offered as a witness on the part of the plaintiff, and was objected *to*, on the ground of his having conveyed the premises; but it appearing that the deed contained no covenants whatever to the purchaser, the objection was repelled, and the witness admitted. He testified, that about 10 months before the mortgage was given, *Dickenson* and one *Harris* entered into articles of agreement with him for the purchase of the mortgaged premises. The deed from the witness to *Dickenson*, and the mortgage to the witness, were executed at the same time. The plaintiff then gave in evidence a deed from *Barton* to the lessors, for the mortgaged premises, pursuant to a sale thereof, made according to the statute. *John Barton*, a witness for the plaintiff, testified, that he had known the premises 40 years, and deduced the possession down to *Roger Barton.* He said, that one *Benjamin Smith* came into possession of the premises in 1798, by virtue of a purchase, by articles of agreement, made with *Dickenson*, to whom he paid the sum of 25 dollars, and built a house on the land, and lived thereon until after *May*, 1790. The witness was present at the time of the sale of the mortgaged premises, and one *Linzey*, then present, and who was in possession of the premises, forbade the sale, and told *Barton* and *Griswold*, that he had a deed from *Smith*,

On this evidence, the defendant's counsel contended, that there was such an adverse possession, at the time of the mortgage, that the property could not pass by that deed. But the judge overruled the objection.

The defendant also gave in evidence a deed of the premises from *Dickenson* and his wife to *Benjamin Smith*, dated 11th *March*, 1799 ; a deed for the same, dated the 2d *October*, 1801, from *Smith* to *Peter Linzey*; and a deed, dated 1st *May*, 1806, from *Linzey* to the defendant.

The plaintiff's counsel endeavoured to show, that the first deed was antedated, and that it was apparent that it was written on an erasure. The deed was shown to the jury.

*Eleanor Gallaway*, who was the wife of *Dickenson*, and had executed the deed to *Smith*, was offered as a witness, to prove that the deed was antedated. She was objected to as incompetent, but the objection was overruled. She said that she believed the deed to be the same she had executed, but did not certainly know, as she could not write nor read ; that she never executed but one deed with her husband to *Smith*. The witness was asked what she heard *Smith* say about his title, while he was in possession, and before he sold the premises ; an objection was made to the question, but the judge permitted the inquiry to be made. The witness stated that *Smith*, after the death of *Dickenson*, wished her to take the land, as *Barton* claimed it, and he was afraid would hold it.

*Roger Barton*, though objected to, was also examined, as to the confessions of *Smith*. He testified, that in a conversation with *Smith* relative to the mortgage and the deed, *Smith* asked *Barton* about antedating the deed, and wished him to sign it ; that he understood the mortgage was of a prior date to the deed ; that *Dickenson* was dead, and he wished to have no further contention, and offered the witness 25 dollars to sign his name to the deed.

The subscribing witnesses to the deed who were called, could not recollect the precise time of its execution, but

only mentioned circumstances, to induce an opinion that it was subsequent to the mortgage.

The judge charged the jury, that from the face of the deed from *Dickenson* to *Smith*, he thought it apparent that the date had been written on an erasure, and that circumstance created a suspicion that it was antedated ; that if the deed was executed after the 19th *March*, 1799, though dated before, it passed no title sufficient to bar the plaintiff's right to recover ; that the weight of evidence arising from the circumstances mentioned by the witnesses to fix the time of the execution and delivery of the deed, was against the defendant. The jury found a verdict for the plaintiff.

*Fisk*, for the defendant, moved to set aside the verdict. He contended for the following points :

1. There was an adverse possession in *Smith* at the time of giving the mortgage, so as to prevent the premises from passing by the mortgage.

2. *Eleanor Gallaway* ought not to have been admitted as a witness, to prove that the deed had been antedated.

3. That the evidence of *Smith's* declaration about his title was inadmissible.

4. That the deed was not antedated.

5. That the date was immaterial, and that the operation of the deed would relate to the time when *Dickenson* could pass the fee of the land.*

6. That the charge of the judge was not warranted by the evidence, and that the verdict was against evidence.

* *Johns. Cases,*
85.

*J. Tallmadge*, contra. He cited 4 *East*, 477. 1 *Black. Rep.* 365. 4 *Burr.* 2225. 3 *Term Rep.* 34. 36. 1 *Johns. Rep.* 343. 1 *Esp. Cases*, 458. 2 *Term Rep.* 53. 1 *Str.* 664. 4 *Cruise*, 355. *Cowp.* 712.

THOMPSON, J. delivered the opinion of the court. I shall briefly examine the several questions raised on the argument, in the order in which they were made.

1. The possession of *Smith* could not be considered adverse to *Barton*, so as to prevent the operation of the mortgage under which the lessors of the plaintiff make title. The agreement between *Barton*, and *Dickenson* and *Harris*, for the purchase of the 160 acres, of which the premises are a part, was made about ten months prior to the date of the mortgage, which would bring it to some time in the latter part of the spring of the year 1798. *Smith*, it appears, went into possession of the particular premises in question, in the summer of 1798, under an agreement with *Dickenson* for the purchase, and remained there in this character, when the deed and mortgage between *Barton* and *Dickenson* were executed. This would not be deemed an adverse holding. It was not hostile to *Barton's* title. *Dickenson* could not have set up against *Barton* an adverse holding, and *Smith*, who claimed under him, must be considered as standing in the same situation.

2. *Eleanor Gallaway* was not an interested witness ; the verdict in this cause could never have been given in evidence, in an action of dower brought by her. But another answer to the objection is, that she was called to testify as to the time the deed was actually executed. Admitting it to have been antedated, it would be good and effectual from the time of its execution ; an acknowledgment, therefore, at any time, duly made by her, would take away her right of dower ; and if she never had legally acknowledged it, her signing would be no bar to her claim of dower, so that on no ground whatever could she be interested. She was not by her deed estopped from showing it to have been executed at a time different from the date. The date is unimportant. The execution and delivery is the important time from which a deed is to take effect. (2 *Johns. Rep.* 234. 4 *East*, 477. 3 *Lev.* 348.)

3. The declarations of *Smith*, while in possession of the premises, as to his title, were admissible against the defendant. These declarations would have been good against *Smith*, and are also competent evidence against all who claim under him. This principle has been repeatedly recognised, both in our own and in the *English* courts. (1 *Johns. Rep.* 343. 1 *Esp. Ca.* 458. 2 *Term Rep.* 53.)

4. Whether the deed from *Dickenson* to *Smith* was actually executed at the time it bears date, was a question proper for the consideration of the jury. Some doubt may exist as to that fact. I am inclined, however, to think that the verdict is according to the weight of evidence ; at all events, it ought not to be set aside on this ground.

5. The deed from *Dickenson* to *Smith* cannot, in its operation, relate back to the time the contract between them was made, so as to bring it within the scope of the decision in the case of *Jackson* v. *Raymond.*\* It is a general rule, with respect to the doctrine of relation, that it shall not do wrong to strangers ; as between the same parties it may be adopted for the advancement of justice. (3 *Caines*, 263.) *Barton* was a stranger to the contract between *Dickenson* and *Smith*, and it would be the extreme of injustice to permit his mortgage to be defeated, by considering *Smith's* deed to take effect by relation, from the time he made his contract for the purchase of the premises.

*\* 1 Johns. Cases, 85. note.*

6. There are no grounds for any objection against the charge of the judge. The case was fairly submitted to the jury, with such observations as the testimony warranted.

On every ground, therefore, the motion for a new trial must be denied.

Rule refused.