*Hartford,*
June, 1829.

Pitkin
*v.*
Pitkin.

———◆———

NORTON *against* PETTIBONE and another.

Where an officer levying an exection on land, in *March,* 1825, omitted to state in his return, that the certificate of appraisment was delivered to him be_ fore he set off the land ; it was held, that this defect was cured by the confirming act of *May,* 1825.

The declarations of a former proprietor of land, made while he was in possession, against his title, are admissible against others claiming under him, in a suit to which he is not a party.

THIS was an action of ejectment, for four pieces of land in *Burlington ;* tried at *Hartford, September* term, 1827, before *Daggett,* J.

The plaintiff claimed title to the demanded premises, by virtue of the levy of an execution in his favour against *Alva Marks,* made on the 11th of *March,* 1825. The piece of land first described in the declaration, containing four acres, was owned by *Marks* in fee ; and in the others his interest was that of a tenant in common. A copy of the execution, with the return of the officer thereon, was offered in evidence. It was objected to, on the ground that by this return, it did not appear, that the appraisers had delivered to the officer a certificate in writing under their hands of the appraisal and estimate of the first-mentioned piece of land ; and also, that the officer had not certified in his return, that the appraisers made any certificate of their appraisal and estimate of the right and interest of the

*Hartford,*
*June, 1829.*

Norton
*v.*
Pettibone.

debtor in the three last-mentioned pieces, nor delivered any such certificate to the officer, according to the 76th section of the act for the regulation of civil actions. The officer, after stating in his return the appointment of three appraisers, all indifferent freeholders of the town of *Burlington,* and that they were duly sworn, proceeded as follows : " The said appraisers did then and there appraise and estimate the first described ﹐piece of land, seised and possessed by the said debtor in fee, at the sum of 68 dollars, as the true and just value of the same, of which valuation they made a certificate under their hands in writing ; and on the same day, I set off to the said creditor the whole of said four acres in part satisfaction of this execution and my fees thereon ; and said appraisers, on said day, did appraise and estimate the right and interest of the said debtor, in three pieces of land owned in common with the heirs of *Alexander Pettibone,* deceased, being one undivided half of the same, at the sum of 851 dollars ; and there remaining due on this execution the sum of 179 dollars, 74 cents, and my fees for executing the same being 10 dollars, 57 cents, making in the whole 190 dollars, 31 cents ; I therefore set off to the creditor therein such part or proportion of the said debtor's right and interest as 190 dollars, 31 cents bears to 851 dollars, the amount of said debtor's interest, as valued by said appraisers in the said land so owned as tenant in common, in full satisfaction of this execution, and of all charges and fees thereon : and on the said 11th day of *March,* I caused the execution, and the indorsement of my said doings thereon, to be recorded in the records of land of the town of *Burlington,* within which said land lies.          Attest.     *Willard Hitchcock,* Constable."

Then followed, immediately below the signature of the officer, the certificate of the justice of the appointment made by him of one of the appraisers, and that he had administered the oath provided by law to them all ; and next to this, the certificate of the appraisers in these words :  " We, the subscribers, freeholders of the town of *Burlington,* having been appointed and sworn, as above specified, to appraise the above described pieces of land to be set off on said execution, did appraise and estimate the first described piece of land at the sum of 68 dollars, and the said debtor's right, title and interest in the remaining three pieces of land, being an undivided half of the same, owned by said debtor in common with the heirs of *Alexander*

*Pettibone*, deceased, at the sum of 851 dollars, as the true and just value thereof.

*Burlington, March 11th*, 1825.

*Zenas Hotchkiss,*
*Lewis Barber,*
*Carlos Hotchkiss,* } Freeholders under oath."

The judge overruled the objection made by the defendants, and admitted the evidence in question.

The defendants claimed title to the demanded premises under *Alexander Pettibone,* one of them as his widow, and the other as his sole heir at law. His title was by deed from *Zechariah Marks,* who derived his title from *Alva Marks,* the debtor in the execution levied as aforesaid. The plaintiff insisted, that this deed was made to defraud the creditors of *Alva Marks,* and therefore was void within our statute against fraudulent conveyances, as also upon the principles of the common law. In support of this claim, he offered to prove, by one *Frederick Lewis,* that *Zechariah Marks,* after the execution of the deed to him, and after he had taken actual possession of the premises under it, and previous to the deed to *Alexander Pettibone,* had acknowledged to him, that the deed from *Alva Marks* to him was without consideration, and made to defraud the creditors of the grantor. To the admission of this evidence the defendants objected, on the ground that no declarations of *Zechariah Marks,* though made while holding the land under the deed from *Alva Marks,* tending to shew that such deed was fraudulent and void, could be given in evidence against his grantees, or those holding under them. The judge overruled the objection, and admitted the evidence offered.

The plaintiffs obtained a verdict ; and the defendants moved for a new trial, on the ground that the evidence so offered, excepted to and admitted, was improperly admitted.

*J. Griswold,* in support of the motion, contended, 1. That the officer's return was inadmissible as evidence of a transfer of title, because it does not shew that a certificate in writing was delivered to him by the appraisers before the land was set off. The statute requires, that the appraisers shall make an estimate of the estate levied upon, in writing under their hands, and the same *deliver* to such officer, who shall[*thereupon* set out to the creditor, &c. Stat. 57. *tit.* 2. *s.* 76. The transfer of title to real estate by the levy of execution, being authorized

*Hartford,*
*June, 1829.*

Norton
*v.*
Pettibone.

by statute only, and not by common law, all the statutory requisitions must be *strictly* complied with. *Metcalf* v. *Gillet,* 5 *Conn. Rep.* 400. And the return of the officer is the only evidence that the requisitions of the statute have been observed. 5 *Conn. Rep.* 404. Now, in this case, the return shews, that the appraisers *made* a certificate of their appraisement of the first piece; but it does not shew, that they ever made a certificate of their appraisement of the other pieces; and with regard to all the pieces, it is utterly silent as to the *delivery* of any certificate to the officer. The probable answer to this will be, (and no other can be given) that a certificate is annexed to the return, and is to be considered a part of it. But why should it be considered a part of the return? It is not incorporated with it; nor does the officer refer to it. Who knows how it came there? The appraisers, the justice, a stranger, or even the creditor may have annexed it, after the officer had completed his return. But if it was put there by the officer, it does not appear, that it was delivered to him *before* he set off the land.

2. That no declarations of a person not a party to the suit, can be admitted in evidence against the defendants. *Duckham* v. *Wallis,* 5 *Esp. Rep.* 251. *Kent* v. *Lowen,* 1 *Campb.* 177. *Appleton* v. *Boyd,* 7 *Mass. Rep.* 131. *Barrett* & ux. v. *French,* 1 *Conn. Rep.* 354. 365. *Hatch* & al. v. *Straight,* 3 *Conn. Rep.* 31. *Cook* v. *Swan,* 5 *Conn. Rep.* 140.

*W. W. Ellsworth* and *Toucey,* contra, contended, 1. That the return was sufficient, as it shewed with reasonable certainty, that every requisite of the statute had been complied with. It appears that the certificate of the appraisers was in the hands of the officer; for he manifestly acted upon it. It was annexed to his indorsement, and recorded with it. He thus made the certificate *a part* of his return. *Williams* v. *Amory,* 14 *Mass. Rep.* 28. It makes no difference whether the certificate be *above* or *below* the signature. A will may be signed, by inserting the name at the beginning, as well as at the end. The items of fees for the levy of an execution on real estate, are generally, if not always, placed below the signature of the officer; but notwithstanding this, are they not *embraced* by the return? Were they not so considered, by the legislature, in the confirming act of 1826, and by the Court, in *Beach* v. *Walker,* 6 *Conn. Rep.* 190.? If a writing annexed is to be

deemed a part of the return for the purpose of *destroying* a **Hartford,**
title, shall it not be so considered for the purpose of *validating* June, 1829.
the proceeding ?

Norton
*v.*
Pettibone.

2. That as the levy in this case was made according to the
law previously and until *January* 1st, 1822, in force, the defect
in the return, if any existed, was cured by the confirming act
of 1825. In *Mather* v. *Chapman* & al. 6 *Conn. Rep.* 54. it
was decided, that this was a constitutional and valid act ;
and the Court gave it effect to cure a more palpable defect
than the one relied on to defeat the plaintiff's title in this case.

3. That the declarations of *Zechariah Marks,* after the deed
to him, and during his possession under it, against his interest,
were admissible evidence against the defendants, holding under
him. *Beers* & al. v. *Hawley,* 2 *Conn. Rep.* 467. 472, 3.

DAGGETT, J. On looking into the act of the General Assem-
bly, passed in *May,* 1825, (subsequent to this levy) to confirm
levies of executions on real estate, it is found, that the defect
in the levy, if it be one, is cured by that act. That this
act is constitutional, and therefore of binding authority, was
expressly decided, by this Court, in the case of *Mather* v.
*Chapman* & al. 6 *Conn. Rep.* 54. The objection is, therefore,
properly abandoned, by the counsel, upon its appearing that the
defect was embraced and cured by the act in question.

Another objection, however, is made, which will now be
considered. This relates to the declarations of *Zechariah
Marks,* which were admitted on the trial. That such declara-
tions, so made, are admissible, I had supposed to have been
too long and too well settled to be doubted. It has been so
ruled more than twenty times within the last forty years.
Declarations of a person, while in possession of the premises,
against his title, are always admissible, not only against him,
but against those who claim under him. To this point the fol-
lowing cases are express. *Walker* v. *Broadstock,* 1 *Esp. Rep.*
458. *Davis* v. *Pierce* & al. 2 *Term Rep.* 53. *Waring* v.
*Warren,* 1 *Johns. Rep.* 340. 343. *Jackson* d. *Griswold,* v.
*Bard,* 4 *Johns. Rep.* 230. *Jackson* d. *McDonald* v. *McCall,*
10 *Johns. Rep.* 377. In *Beers* & al. v. *Hawley,* 2 *Conn. Rep.*
467. this point was considered, and the whole Court of Errors
concurred in the admissibility of the evidence. Three mem-
bers of the Court gave their opinions *seriatim*—Judges *Swift,
Hosmer* and *Gould ;* and all recognized, in direct terms, this

*Hartford,*
*June, 1829.*

Norton
*v.*
Pettibone.

doctrine. The latter says: " The declarations of a former proprietor against himself, have always been admitted against those who claim under him." *P.* 472, 3.

The motion, therefore, must be refused.

The other Judges were of the same opinion, except WIL-LIAMS, J., who gave no opinion, having been of counsel in the cause.

New trial not to be granted.