## Henry Bower v. Thomas Earl.

*Conveyances: Construction of description.* Where a deed conveys lots in a town and refers to a plat to identify them, and in describing their lines calls the points of compass as designated on the plat by its lines and angles, a correct survey cannot be based upon any other system; and although the lines there delineated are not conformable to the true meridian, the plat, and not the compass, should govern.

*Evidence: Statements by grantor in disparagement of title.* Where certain statements were made by a prior grantor, while in possession of certain premises, concerning the extent of his holding and the place of the dividing line between him and his neighbor, in a trial of title where a subsequent grantee was a party: *held*, that while they could not prove he actual title, they were competent to explain the nature and extent of said grantor's possession, as being part of the *res gestœ*.

*Grant of part of a large tract: Change of possession: Evidence of ownership.* When there has been an actual delivery of possession of premises given by a grantor to the grantee, purporting to be for the purpose of carrying the grant into effect, and when such premises delivered are but a portion of a larger tract owned by the grantor, his retention up to a certain line, and his surrender beyond it, indicate that he claimed ownership to that boundary, as the true line of the grant, and denies his grantor's title to all within it.

*Change of possession: Occupancy: Adverse possession: Undisputed tenancy.* In such case the retention of the part not delivered is a distinct occupancy, and as a possession, stands on the same footing as if held by any other person than the grantor. A right of action would at once arise in favor of the grantee claiming such land against such occupant; and that right, where the latter does

BOWER v. EARL.

not in the interval admit it in fact, or by implication of law, would become barred by the lapse of the statutory period of limitation.

Where possession has been thus held for the statutory period, unless it is shown to have been virtually a tenancy undisputed by the tenant at some time in the interval, the bar is complete.

*Acquiescence as to possession.* The acquiescence which will prevent the running of the statute must be that of the possessor in the owner's claim, and not that of the owner in a possession not acknowledged to be held under him.

Acquiescence which is merely inaction on the part of a claimant, is the very thing which the statute contemplates as creating the limitation which cuts off the right of action.

*Heard April 27th.   Decided May 4th.*

Error to Washtenaw Circuit.

This was an action of ejectment for a strip of land, part of lot No. 8, in the city of Ann Arbor. The entire lot belonged to Edward Munday in 1834, who, July 18, 1842, conveyed to Mulford and Peter Martin a portion of the same, commencing on Main street at the northeast corner of said lot, and running on Main street 21 feet south, thence west to the alley in the rear of said lot, thence north to the north line of said lot, and thence east to the place of beginning. The plaintiff became the owner of this title through several mesne conveyances. The title to the remainder of lot 8 continued in Mundy until his death, and his devisee, by deed dated December 23, 1863, conveyed to the defendant a portion of said lot described as follows: beginning 21 feet south of the northeast corner of lot No. 8, thence south 23½ feet on Main street, thence west parallel with the north line of said lot, 52 feet, thence south 9½ feet, thence west to the west line of said lot; thence north on the west line of said lot 33 feet, thence east to the place of beginning.

The testimony tended to show that before the conveyance to the Martins two 'stores had been erected on the lot; that the deed to them covered the land on which the north store was situated, and a portion of the premises covered by the south store. That the Martins and their grantees have held possession of the north store ever since the conveyance to them in July, 1842; and Mundy and his

devisee and grantee have occupied the south store during the whole of that time. The land in dispute in the suit is that portion of the lot which is covered by the deed to the Martins, but which has been ever since occupied by Mundy, his devisee, and Earl the grantee of said devisee.

The defence was based on the continued occupancy by Mundy and his successors.

William C. Voorhees, on the part of the defendant below, stated that he occupied the north store under the Martins, having leased it of Mundy, acting as their agent, although the witness had no knowledge of any authority except that he said he was agent. That while so occupying, he built an addition to the store for the Martins, thirty feet in length, in the rear of the store. The witness was permitted to testify, "Mundy pointed out where to build it, and said that was the line, and that this new wall to be a party wall when an addition should be built to the store now occupied by the defendant."

Witness further testified, under objection, that he claimed and occupied under his deed of the premises, "the store and the land to the alley, the width of the store."

The court charged the jury that if the premises, described in the declaration, passed by the deed from Edward Mundy and wife to Mulford and Peter Martin, and said Mundy and his grantees continued to occupy the same after said conveyance, for the term of twenty years, with the acquiescence of said Martins and their grantees in such occupancy, then such occupancy and acquiescence are a bar to the recovery of the plaintiff in this suit; to which plaintiff excepted. The counsel for plaintiff then requested the court to charge the jury (if adverse possession was relied upon as a defence,) that if the premises in dispute passed by the conveyance from Edward Mundy and wife to Mulford and Peter Martin, and said Edward Mundy remained in possession thereof after the conveyance, such possession would not of itself be adverse to said Mulford

and Peter Martin or their grantees; which the said court refused, and to which plaintiff excepted.

A verdict was rendered for defendant.

*A. Felch,* for plaintiff in error.

1. The title to the land could not pass by any parol statement even of the Martins themselves. A deed of conveyance alone could divest the Martins of their title.

*a.* Such a statement could not operate as an estoppel, because it is not claimed · that it was ever acted upon, or that · Mundy or his devisee or grantee did anything or suffered anything in consequence of it, or was ignorant of the true line, or was deceived by the other party. *2 Smith's Leading Cases, 745, 748, ; 767, 768.*

*b.* If any effect could be given to these sayings or acts of Mundy, it would be to transfer back to himself as the owner of the adjoining land, by his own utterance of a few words, the title to the · land which he had conveyed to the Martins by warranty deed.

*c.* But even if Mundy had had full authority from the Martins to sell and convey their land or any portion of it, the most solemn deed made to himself under the power, would be invalid. He cannot do by simple parol statement what he could not do by the most formal deed of conveyance.

2. The witness, Voorhes, testified that he purchased the premises then occupied by the plaintiff, Bower. The counsel for the defendant below then asked the witness this question: "What did you claim and occupy under your deed of these premises?

A grantee may occupy less than the entire premises without losing any right in the property. He may be mistaken in the lines of his premises, and both occupy and claim less than he is entitled to, without losing his title to any land that is actually covered by his deed. The title cannot be thus transferred by an owner, nor can

another person acquire his land in such a case without a deed of conveyance, or such adverse possession as bars the right of the owner.

3. The third error assigned is to the charge of the court in the following words: "If the premises described in the declaration passed by the deed from Edward Mundy and wife to Mulford and Peter Martin, and said Mundy and his grantees continued to occupy the same after said conveyance for the term of twenty years, with the acquiescence of said Martins and their grantees, then such occupancy and acquiescence are a bar to the recovery of the plaintiff in this suit."

Title by occupancy was recognized in the old books, but it existed only in case of a tenancy during the life of another person, and has long since become obsolete.— *2 Washb. on R. Prop. 457.*

Acquiescence in the occupancy of land by another implies consent—a tacit permission to occupy, and precludes the idea of opposition or a holding adverse to the will of the owner or in denial of his title.

Neither occupancy alone, nor occupancy with acquiescence of the owner can give title. The solemnity of a deed of conveyance to pass real estate is not dispensed with by either or both of these.

Where doubt exists in the description contained in a deed or monuments which are lost, the declaration or acquiescence of parties are admissible, not to contradict the deed, but to show where, in truth, lost or uncertain monuments were. But for the purpose of transferring title, a conveyance in writing as required by law cannot be dispensed with.—*Clark v. Withey, 19 Wend. 320; Terry v. Chandler, 16 N. Y. 354; Tolman v. Sparhawk, 5 Metc. 476.*

Even in New York it is held that if the starting point can be found, and the lines accurately run and determined by the courses and distances of the deed, the

boundaries must be settled by the terms of the deed, and cannot be altered or effected by parol evidence.— *Waugh v. Waugh, 28 N. Y. 94.*

And that it is not competent to establish a new line by parol agreement. —*Vosburgh v. Tealor, 32 Id. 561.*

The bar of 20 years recognized by the statute is not given to occupancy and acquiescence, but to a possession of the disputed premises, which, to be available, must be an actual, continued, visible, notorious, distinct and hostile possession.—*2 Smith's Leading Cases, 637, et seq.*

4. The fourth assignment of error is upon the refusal of the judge to charge the jury on the question of adverse possession that "if the premises in dispute passed by the conveyance from Edward Mundy and wife to Mulford and Peter Martin, and said Edward Mundy remained in the possession thereof after the conveyance, such possession would not of itself be adverse to said Mulford and Peter Martin or their grantees."

The correctness of the principle involved in the charge requested, seems to be fully settled by judicial decisions. —*Bloomer v. Henderson, 8 Mich. 395 ; Dawson v. The Danbury Bank, 15 Id. 489 ; Jackson v. Burton, 1 Wend. 341 ; Swart v. Service, 21 Id. 36.*

*M. McKernon,* for defendant in error.

1. The admission of the witness, Mundy, was offered for the sole and exclusive purpose of showing, first, what was the understanding and intention of the parties to the conveyance made a short time before, and while they were carrying it out in practice. And second, for the purpose of showing what, and how much, Mundy did claim at that time. And, third, for the purpose of showing that the understanding was mutual, and acted upon by both parties at that time, and up to the very commencement of this action. And, fourth, for the purpose

of rebutting the inferences that might be drawn by the court or jury from the testimony of the surveyor, Professor Wood. This was competent.

The intentions of the parties to a conveyance can always be shown.

So also declarations of persons made while in possession of property, are admissible, and even (as in this case,) long after their decease.—*Pike v. Hays, 15 N. H. 19 ; Stewart v. Hanson, 35 Maine, 506 ; Young v. Adams, 14 B. Monroe, 132 ; Nelson v. Iverson, 17 Alabama, 216 ; Wooster v. Buller, 13 Conn. 309 ; 1 Greenleaf on Ev. §§ 109, 110.*

As to the second error assigned, we claim that the ruling of the court below was clearly correct, because:

While we admit that a man may occupy less than he owns, we also insist that his claim, and occupancy of all that he does claim, is very good evidence of the extent of his right, as well as of how the line in question was understood at that time by the parties in question.

It shows that the parties had put their own construction upon these deeds, and had all occupied accordingly.

All such constructions should be respected by courts, unless there is fraud alleged and proven; neither of which was done in this case.

Besides, it proves and establishes the fact, that all the occupants understood and intended that the word "east" was to be taken as meaning east, according to the plat referred to in the deeds, and given in evidence.—*23 Vt. 435.*

3. As to the third error assigned.

Occupancy has at all times been recognized as evidence of ownership, and the acquiescence of others, renders that evidence absolute.

But where the acquiescence and occupation is by adjoining owners in relation to the boundaries of their respective lands, it surely must be conclusive upon them and

their grantees.—*Brown v. Edson, 23 Verm. 436 ; Rockwell v. Adams, 6 Wend. 467 ; Same case, on Error, 16 Id. 286 ; 2 Hilliard on Real Prop. 345 p. 36, 3d Ed.*

*a.* This was not a change of title by mere parol, but it was the settlement of a boundary, both by acquiescence and occupation, as well as through the operation of the statute of limitations.

*b.* It may be claimed that title cannot be acquired by occupation alone, but we insist that the Statute of Limitations of this State requires only occupation to bar a claim of right.—*2 Comp. Laws, 1403.*

4. In relation to the fourth error assigned by the plaintiff's counsel (the refusal of the judge to charge in relation to adverse possession,) we have this to say:

*a.* There was no such matter of defence set up on the trial, and no such matter appears in the bill, only as it was drawn in by the plaintiff's counsel.

*b.* And if this matter is to be insisted upon at the argument in this court, we claim that the Statute of Limitations of this State does not recognize the doctrine of adverse possession, and that such a state of affairs cannot arise under it.

*c.* Again, whatever authorities (if any) may be cited by the learned counsel for the plaintiff, we claim that they are not applicable to this matter, having arisen under statutes that recognize the doctrine of adverse possession, which the statutes of this State do not.

CAMPBELL J.

Bower brought ejectment against Earl, to recover a small gore of land, having a width of six inches in front, on Main street, Ann Arbor, and widening at the rear to three feet. Bower's alleged title was derived by mesne conveyances through William C. Voorhees and William Tibbals, from Mulford Martin and Peter Martin, who purchased of Ed-

ward Mundy. The description in the deed from Mundy was as follows: "Being all of that portion of village lot number eight, of range number three, and block number one north of Huron street, beginning on Main street, at the northeast corner of said village lot, and running on Main street aforesaid twenty-one feet south; thence west to the alley in the rear of said lot; thence north to the north line of said lot; and thence east to the place of beginning, with the brick store thereon standing." Defendant also claimed by purchase from Mundy's estate of the remainder, or most of the remainder of lot eight. The controversy was whether the gore was covered by the description.

From the testimony of the surveyor who undertook to locate the land on the trial, this gore was made by taking a line due west, and not at right angles with Main street, whereas the defendant claimed that the lines should have been run at right angles, which would have made the description a regular parallelogram, and which would also make it correspond with the building referred to in the deed. The testimony showed that Mundy sold by this description to the Martins, in 1842, and that he and his grantees had retained possession ever since, up to the store line, which defendant claims to be the true boundary. The questions raised on the trial all grew out of matters explaining this possession, or connected with it.

It is quite manifest that some of the difficulties supposed to exist in this case have arisen from the erroneous theory on which the surveyor proceeded; and as the questions of possession are more or less connected with the situation of the lines, we cannot overlook this element in considering the case as presented on the exceptions. The surveyor, after ascertaining in some way what is supposed to be the northeast corner of the lot, assumed that the first course, of twenty-one feet, should run due south, the next one due west. But, having reached the alley, he followed that, although not in a north and south line,

to the northwest corner of the lot, and did not run the north line, which, if run due east from the northwest corner, would not have reached the place of beginning.

The description in the deed requires the direction which it calls south, to coincide with Main street, and the direction it calls north to coincide. with the alley parallel thereto; and the north line of the lot is said to run east from the northwest corner to the northeast corner. The plat, which is admitted by stipulation as genuine, shows that the lines of lot eight run at right angles with Main street, and that the whole system is rectangular. Inasmuch as the deed refers to the plat, and calls the points of the compass in accordance with its lines and angles, no survey could be correctly based on any other system; and if, as seems to be the case, the lines are not true meridian or east and west lines, the plat and not the compass should govern. The legal construction cannot be varied, and the guides which the parties chose to indicate and follow, must not be disregarded in the construction of their deeds.

It is a matter of some doubt whether the admitted facts do not render the whole controversy on the exceptions irrelevant; but as the questions raised may possibly be material on any other dispute of location (although the finding does not seem to leave much else open to controversy), we shall proceed to consider them.

Errors are assigned upon the admission of the declarations of Edward Mundy, and of Voorhees, touching their claims concerning the extent of their ownership. Mundy's statements were made to Voorhees, when the latter was building a store upon their lot for the Martins, and upon that occasion he pointed out where it should be built, and said that was the line, and that the new wall was to be a party wall, when an addition should be built to the store now occupied by defendant. The statement of Voorhees, which was objected to, was, that when

in possession, he only claimed and occupied the store and the land to the alley the width of the store. These statements were objected to as attempts to create title by parol.

They, certainly, could not be any proof of title. But they were introduced for no such purpose. They were properly received to explain the nature of Mundy's pos_ session, and were receivable on the same principle which allows statements as part of *res gestæ*. They create no right, but simply explain a fact, which is not in itself conclusive of anything, and which derives its legal character from its intent and circumstances. Voorhees' claim while in possession was in disparagement of his own title to the strip in the suit; but we agree with Mr. Greenleaf, that such statements and claims to explain possession are admissible for what they are worth, whether in disparagement of title or not. — *1 Greenl. Ev.* § 109.

The court charged the jury that if the premises in question passed, by the deed from Mundy to the Martins, and Mundy and his grantees continued after the conveyance to occupy the same for twenty years, with the acquiescence of the Martins and their grantees in such occupancy, then such occupancy and acquiescence would be a bar to recovery in this suit. And the court refused to charge that if Mundy so remained in possession, such possession would not of itself be adverse.

Counsel for plaintiff in error relied upon *Bloomer v. Henderson, 8 Mich. 395*, and *Dawson v. Danbury Bank, 15 Mich. 489*, to show that where a grantor remains in possession after conveyance, he is to be regarded as holding under his grantee, and not by any other claim. Those cases hold that such possession held without change, after a conveyance, is not notice of any other claim as against third persons; but they do not hold that it is incompatible with any other right as against the grantee, if any such right exists, and is not inconsistent

18 Mich.—z.

in fact with the existence of the grant. But where there has been an actual change of possession given by the grantor to the grantee, which purports to be for the purpose of carrying the grant into effect, and where the premises granted are a portion of a larger tract owned by the grantor, his retention up to a certain line, and his surrender beyond it, would naturally indicate that he claimed ownership to that boundary. Where there is an actual change, and the grantee is only admitted within certain lines, the retention of the rest is a distinct occupancy, and, as a possession, stands on the same footing as if held by any other person than the grantor. A right of action would at once arise against the occupant, and that right, where the latter does not in the interval admit it in fact, or by implication of law, would be barred by the lapse of the statutory period of limitation. Where possession has been thus held for that period, it must be shown to have been virtually a tenancy undisputed, at some time in the interval, or the bar is complete. The acquiescence which will prevent the running of the statute, must be that of the possessor in the owner's claim, and not that of the owner in a possession not acknowledged to be held under him. Acquiescence, which is merely inaction, is the very thing which the statute contemplates as creating the limitation which cuts off the right. As in this case, the evidence showed nothing whatever to contradict the claim or holding of Mundy and his grantees, the plaintiff had no right to the charge refused, which was, under the circumstances, an abstract proposition, and of no importance upon the inquiry before the jury.

The judgment should be affirmed, with costs.

The other Justices concurred.