### ADDISON P. COOK v. GEORGE KNOWLES.

*Execution sale—Notice—Deed—Adverse possession.*

Conversation between an attachment debtor and his grantee, tending to show that the deed, which was dated some time before the levy of the attachment, was not delivered until after, is admissible in evidence in an action of ejectment against a later grantee.

Parol evidence is admissible to show the true date of the delivery of a deed.

The sheriff's certificate of sale and deed are the execution purchaser's evidence of title.

Want of notice of a sheriff's sale may impose a liability on the sheriff, but does not invalidate the title of an innocent purchaser under it.

There can be no adverse possession against one whose legal title or right of entry is incomplete.

An execution purchaser's legal title or right of possession is not perfected until the time for redemption from the sheriff's sale is over, and he has obtained his deed from the sheriff.

Error to Jackson. Submitted June 20, 1877. Decided February 1, 1878.

EJECTMENT. Plaintiff brings error.

*G. T. Gridley* for plaintiff in error. Possession of a deed by the grantee is not conclusive evidence of delivery; it may be shown that delivery was not made at the date of the deed, or not at all, *Roberts v. Jackson,* 1 Wend., 485; 3 Washb. Real Property, 577, 581; as to adverse possession in cases of execution purchases, see *Jackson v. Graham,* 3 Cai., 188; *Jackson v. Bush,* 10 John., 223; *Jackson v. Collins,* 3 Cow., 89; *Jackson v. Bradford,* 4 Wend., 619.

*Austin Blair* for defendant in error. Declarations in disparagement of the declarant's title are only admissible when *res gestæ* (*Peaceable v. Watson,* 4 Taunt., 17; *Daggett v. Shaw,* 5 Met., 226; *Van Deusen v. Turner,* 12 Pick., 533; 1 Greenl. Ev., 133) and not when narratives of past occurrences (*Bartlet v. Delprat,* 4 Mass., 702; *Clarke v. Waite,* 12 Mass., 439; *Hurd v. West,* 7 Cow., 759; *Ruggles v. Fay,* 31 Mich., 141; *Stark v. Boswell,* 6 Hill, 405; it is presumed that a sheriff's deed is delivered at the date of acknowledgment as shown in the certificate of sale, *Seymour v. Van Slyck,* 8 Wend., 403; *Wyckoff v. Remsen,* 11 Paige, 564; *Johnson v. Moore,* 28 Mich., 3; *Blanchard v. Tyler,* 12 Mich., 339; *Souverbye v. Arden,* 1 Johns. Ch., 255; advertisement of a sheriff's sale is a condition precedent to the sale, Rev. Stats. 1846, 318, § 2; one who purchases at an execution sale of his own property, can acquire title only by a regular sale, *Olcott v. Robinson,* 21 N. Y., 155; *Udell v. Kahn,* 31 Mich., 196; *White v. Cronkhite,* 35 Ind., 483.

GRAVES, J.   April 7th, 1875, Cook brought ejectment against Knowles for one eighty acre lot in Jackson county. Both parties asserted title under John R. Tuttle, Cook as purchaser on an execution sale under a judgment in his favor rendered in an attachment suit against Tuttle, and the defendant Knowles as grantee of his father Benjamin Knowles who held as grantee of Tuttle. The attachment was levied on the land November 21st, 1854. On the 11th of April, 1855, judgment was given; on the 14th execution was issued and two days later was levied on the land. June 9th, 1855, the sheriff sold to Cook, and on October 18th, 1856, deeded to him pursuant to the levy and sale. Knowles gave in evidence first a record of a deed of the land from Tuttle and wife to Benjamin Knowles. The deed and certificate of acknowledgement bore date November 11th, 1854, or ten days earlier than the levy of the attachment. The date of the record was, however, December 1st, 1854, or some ten days later than the levy. Knowles also made proof of the record of a deed from his father Benjamin to himself. This deed was dated January 20th, 1870; the record, April 17th, 1875. Cook produced one Snow as a witness and offered to prove by him certain conversations on the premises between Benjamin Knowles and Tuttle in the fore part of December, 1854, relating to the deed from the latter to the former and the time of its delivery, and tending to show that in fact it was not delivered until after the levy was made under the attachment, and when the offer of this evidence was made the counsel for Cook in reply to a question by the court, observed that it was not expected to show that when the suggested conversation occurred any new bargain was made or that anything was done in respect to the deed; that the conversation related to what had been done just previously.

The court sustained an objection to the offer, and refused to allow the evidence to be given. Whether the deed from Tuttle to Benjamin Knowles was in fact delivered before or after the levy of the attachment was a

vital question, and the true date of the fact of delivery was lawfully provable by matter outside the deed and by parol. *Mayburry v. Brien*, 15 Pet., 21–38; *Woodward v. Woodward*, 4 Halst. Ch., 779, and authorities.

An attempt to make the instrument itself conclusive of the actual date of its delivery would lead to the absurdity of seeking to allow it to operate as a deed for the very purpose of proving it to be one.

Was the conversation between Tuttle, the attachment debtor and predecessor in title of both parties, with Benjamin Knowles, the immediate grantee of Tuttle and grantor of defendant, admissible to show that the deed from Tuttle was not delivered, and hence that the grant did not take effect, until after the levy. The conversation occurred, according to the offer, on the premises and a few days after the deed from Tuttle was placed on record, and it related to matters not then occurring, but to such as had taken place a little while before.

If the offer had been allowed and the evidence had been given, it would have been evidence of an admission by Benjamin Knowles, the purchaser from the execution debtor and the grantor of defendant, while in possession and before sale to defendant, that the deed was in fact delivered after the levy, and further that his holding was actually subordinate to the levy. Indeed, it would have been evidence tending to show that Tuttle, the attachment debtor, and Benjamin Knowles, his grantee and the grantor of defendant, combined to make use of the deed with an untrue date in order to overreach the attachment levy. In speaking of the proposed evidence in this manner, it is not intended to give any opinion of its weight or trustworthiness. Whether a jury would give it any credence, or if any, with what effect, is not the inquiry now. The present question concerns its competency alone,—relates to its fitness to be considered by the jury at all. There is some confusion in the books concerning the occasions proper for admitting declara-

tions of strangers to the cause in disparagement of title and the ends to which it ought to be restricted. But I think the evidence which was offered and rejected here was admissible upon principles settled in this State and generally approved elsewhere. The cases are too numerous to be fully cited. A few may be specially referred to, and the first to be noticed is *Bower v. Earl*, 18 Mich., 367. The action was ejectment, and we held that statements made by a former grantor of one of the parties, while in possession, concerning the extent of his holding and the place of the dividing line between him and an adjoining proprietor, were competent to explain the nature and extent of his possession, and we expressly approved the doctrine stated by Mr. Greenleaf. 1 Greenleaf's Ev., § 109. In *Norton v. Pettibone*, 7 Conn., 319, an ejectment case, the plaintiff claimed title by virtue of the levy of an execution in his favor against Alva Marks, made March 11th, 1825. The defendants were the widow and heir-at-law of Alexander Pettibone, from whom they claimed. His title was by deed from Zechariah Marks who derived title from Alva Marks, the execution debtor before mentioned. The plaintiff contended that the deed from Alva to Zechariah was made to defraud Alva's creditors, and in support of this charge he offered to prove by one Lewis that Zechariah, after the deed to him and after he had taken possession under it and before his deed to Pettibone, had acknowledged that the deed from Alva was without consideration and made to defraud Alva's creditors. The evidence was duly objected to but admitted. In sustaining the ruling, Judge Daggett, speaking for the court, observed: "That such declarations, so made, are admissible, I had supposed to have been too long and too well settled to be doubted. It has been so ruled more than twenty times within the last forty years. Declarations of a person, while in possession of the premises, against his title, are always admissible, not only against him, but against those who claim under him." After citing several cases, and among

them, *Beers v. Hawley*, 2 Conn., 467, he added that the point was considered in that case "and the whole court concurred in the admissibility of the evidence;" that Judges Swift, Hosmer and Gould respectively gave opinions, and all recognized in direct terms this doctrine.

*Bridge v. Eggleston*, 14 Mass., 245, was a writ of entry. The demandant claimed under an execution he levied on the premises as the property of Joseph Goodwin, November 15th, 1811. The tenant claimed to hold under a deed from the same Goodwin, dated October 6th, 1809, acknowledged and recorded. The demandant undertook to show that this deed was made without good and valuable consideration, and was not in good faith, but made to delay or defeat the creditors of Goodwin. It was admitted that demandant was Goodwin's creditor at the date of the deed and long before,—his claim originating in consequence of the liability of Goodwin and other directors of the Berkshire bank in their individual capacity. The demandant proved that the bank stopped payment in August, 1809. The court admitted, against objection, evidence of declarations by Goodwin before his deed to Eggleston tending to prove a fraudulent purpose on his part to dispose of his property in order to keep it away from creditors, and it was held on error that the evidence was proper for the jury.

*Jackson v. Bard*, 4 Johns., 230, was an action of ejectment. The plaintiff made title under a mortgage given by one Dickenson. The defendant claimed under one Smith, who assumed to be grantee of Dickenson. The plaintiff insisted that the deed from Dickenson to Smith was antedated for the purpose of overreaching the mortgage, and he was allowed to prove admissions made by Smith while he was in possession and before he sold, that the deed was antedated, and other statements tending to prove the fact. On error the court said: "These declarations would have been good against Smith, and are also competent evidence against all who claim under him. This principle has been repeatedly recognized, both

38 MICH.—41.

in our own and in the English courts.   *   *   Whether the deed from Dickenson to Smith was actually executed at the time it bears date, was a question proper for the consideration of the jury."

The following cases may be consulted also: *Weidman v. Kohr,* 4 Sergt. & Rawle, 174; *Pickering v. Reynolds,* 119 Mass., 111; *Padgett v. Lawrence,* 10 Paige, 170; *Vrooman v. King,* 36 N. Y., 477; *Tipton v. Ross,* 10 Ohio, 273; *Woolway v. Rowe,* 1 Ad. & El., 114; *Noyes v. Morrill,* 108 Mass., 396; *Crippen v. Morss,* 49 N. Y., 63; *Newlin v. Lyon,* id., 661; *Smith v. Powers,* 15 N. H., 546; *Hobbs v. Cram,* 22 N. H., 130; *Walcott v. Keith,* id., 196; *West Cambridge v. Lexington,* 2 Pick., 536; *Regina v. Exeter,* L. R., 4 Q. B., 341.

Under the doctrine recognized in *Bower v. Earl* and expounded in the other cases it seems quite plain that the proof which was offered and rejected was admissible to the jury.   The defendant further contends that assuming the rejection of the offered proof to have been error, still it was not an error which worked any prejudice, because, as he claims, the plaintiff, as appears from the record, failed to make out a case.   The grounds of this position require only a few words.   *First,* it is said the plaintiff was bound to make proof that the sheriff's sale was advertised, and yet gave no evidence tending to show it.   It is a sufficient answer to say that the want of notice would not in this State invalidate the title.   The sheriff may be liable, but the innocent purchaser cannot be prejudiced.   The certificate of sale and deed are his evidence of title.   *Spafford v. Beach,* 2 Doug. (Mich.), 150.   *Second,* it is said the premises had been held adversely for twenty years when this suit was commenced.

There is no decisive proof in the record of a continuous possession by the defendant and his father prior to April 7th, 1875, when the suit was commenced.

But one thing is quite clear, and it is that the plain-

tiff acquired no complete legal title or any right of possession until October, 1856, when the redemption was over and he obtained his deed, and this was less than twenty years before suit. No one could raise a right against him to the premises by an adverse holding whilst he was not invested with the legal title and could not enter at all for his own protection.

There could be no such thing as a holding adverse to him so long as he had no right or title under which to make entry or justify possession.

Not having a right of entry, and hence not being kept out, no right of his could be cut off by the possession of others.

It is unnecessary to advert to other considerations at present which the case suggests. The judgment must be reversed with costs and a new trial ordered.

MARSTON, J., concurred.

CAMPBELL, C. J. (concurring). I concur with the views of my brother Graves, and propose only to add a few suggestions on the principal question on the record.

I do not understand that declarations in regard to title are any more admissible concerning boundaries than upon any other matter relating to the declarant's rights. Public boundaries may be shown by hearsay in some cases, but there is no such rule as to private boundaries; and the cases where such testimony has been received are shown by Mr. Greenleaf to rest on the ground that they are declarations of a party interested, limiting his rights. See note to § 145, 1 Greenl. Ev. And in § 189 he gives several familiar instances of declarations by former owners or occupants of land which have been regarded as competent to bind their successors in the title. These declarations will be found to extend to title as well as to boundary, and to reach incorporeal as well as corporeal rights. Such testimony has been received in several cases in regard to tithe compositions.

*De Whelpdale v. Milburn*, 5 Price, 485; *Maddison v. Nut-tall*, 6 Bing., 226. The valuable notes of Cowen and Hill to Phillips' Evidence have collected in note 104 a numerous list of authorities on this subject and deduced with much clearness the reasons why such testimony should not be regarded even as exceptional. Their reasoning is so satisfactory that Mr. Justice Bronson in deciding a case relating to personal property declares himself so impressed by it that he is unable to see why the same rule should not be applied in New York to that; and plainly says the precedents in that State compel him to hold otherwise against his judgment. *Beach v. Wise*, 1 Hill, 612. As to real estate, the New York courts have applied the rule precisely as it is involved in the case before us. In *Jackson v. Bard*, 4 Johns., 230, the controversy mainly turned upon the date at which a deed became operative, and the declarations of a former owner were held proper evidence against all claiming under him. And in *Jackson v. Myers*, 11 Wend., 533, the evidence was also of declarations of a party in possession to defeat a deed. The language of Savage, C. J., is very instructive, and in my judgment puts the doctrine on a simple and plain ground. He says: "The doctrine that parol declarations shall not be received to divest a legal title, is not applicable in this case. Such declarations cannot be received to divest an estate already shown to have vested, or when it is shown that there is higher evidence. The object here was to show that no title vested; that the instrument which purported to convey the estate was void. It is always competent to show that a deed was delivered as an escrow, or that it was obtained by fraud. There can be no doubt that it might be shown by any competent witness who knew the fact, that a deed was obtained by imposition or by force, duress, or that it was executed for the express purpose of defrauding the creditors of the grantor. How can such evidence be given but by parol? By persons who were present at the concoction of the fraud, and knew the facts and the

declared intents of the parties when the deed was executed. If these facts could be proved by parol, by indifferent persons, why not prove them by the admissions of the parties? Had the subscribing witnesses been produced who had heard Miller make similar declarations to those made to Pitcher, there could have been no good objection to it on the ground of its being parol evidence. If that objection were to prevail in such a case, a deed could seldom be proved fraudulent."

This language is pecularly applicable here. A deed is shown which is dated back beyond the levy of an attachment, but which was not recorded until some time thereafter. The date of its delivery is very material, because if delivered after the levy to a purchaser with notice, the fraud would be clear. The delivery can only be effectively proved in advance of the registry by parol. The registry itself is not absolute proof of delivery, and is no proof whatever of any particular date of delivery. The delivery is as necessary a part of the contract of sale as the deed itself, and it is a part of the contract always open to parol evidence. All other parol contracts may be shown against parties by their admissions, and there is no ground for making this an exception.

It cannot be doubted that whether a person is a purchaser of lands with notice, is always open to parol evidence, and always provable by his admissions before he has ceased to be interested. Even the possession of an absolute deed with such notice is of no avail unless payment was made before notice. I cannot persuade myself that such testimony as was rejected in this cause is even exceptional. It is precisely such as is received in most cases of fraudulent transactions. The policy of the registration laws cannot in any way interfere with the proof of facts which are material and which can under no circumstances appear of record.

As it has been suggested by the courts in some of the cases referred to by the writers on this subject, the effect of such testimony as against a *bona fide* purchaser

is not at all material in determining its admissibility. No one but a *bona fide* purchaser without notice can avoid its force. Whether a claimant is a *bona fide* purchaser is to be decided by the jury when all the testimony is in, and not by the court in advance. This record certainly makes out no conclusive case of such a purchase. The record of the deed was subsequent to the date of the levy, and the record of the execution sale was made many years before the plaintiff in error purchased. How he purchased and on what consideration does not appear, and does not concern this discussion. If the first grantee was *mala fide*, the second one had the burden of showing why he should not take a damaged title. As there are no exceptional rules relating to his own rights which could prevent the jury from examining them, we must assume that he made out no such case as would necessarily put him in any better position than his father who was his grantor.

CooleY, J. (dissenting). The land in controversy is claimed by the plaintiff under an attachment levied in November, 1854. Defendant claims it under a conveyance made by John R. Tuttle, the attachment debtor, dated prior to the attachment, but recorded December 1, 1854. In this deed Benjamin Knowles was grantee, and he appears to have gone into possession of the land near the time when the deed was recorded, but the precise time is not shown, and in 1870 he conveyed to defendant. The principal question on this record arises upon offers made by the plaintiff to show declarations of John R. Tuttle and Benjamin Knowles tending to show that the deed of Tuttle to Benjamin Knowles was subject to his attachment. Some evidence was put in and afterwards stricken out, which tended to show statements or admissions by Tuttle and Knowles made some time after Knowles' deed was recorded and while he was in possession, that they had negotiations for the purchase by the latter of the land the preceding fall, and that these fell through after a deed had been made out, but were after-

wards renewed with knowledge on the part of both: that the attachment had been levied. A specific offer of proof was also made by counsel as follows:

"I propose to prove that on or about the fifth day of December, 1854, Benjamin Knowles, the grantee in this deed, made a statement to the witness that he had been to Jackson to see in regard to this attachment suit that was levied on this land, and the remarks that were made concerning the attachment at that time, to be followed by the statement of the two parties when together at a subsequent time, about two or three weeks after that, when both Tuttle and Knowles were together at the premises, and that they there made declarations concerning the manner of the execution of this deed, when it was executed, and that the old papers—the papers that had formerly been made out—were used subsequent to the time of the levy by virtue of this attachment." "The testimony will tend to show that the deed was not delivered at the time it was made, but that a new bargain was made and the deed delivered after the levy of this attachment."

Accompanying this was a disclaimer of any expectation of showing that any thing in respect to the deed was done or any new bargain made at the time of the conversation: the conversation relating exclusively to what had been done previously. It is assigned for error that this offer was rejected.

Were this a new question, I should deem it pertinent to remark upon the extreme danger of this sort of evidence,—evidence of oral declarations privately made more than twenty years before, calculated, if believed, to overturn the most solemn evidences of title now held by a party, who it is not claimed, had ever heard of them, and whose *bona fides* in acquiring the title in reliance on the record evidence is in no manner assailed. If conveyances may be defeated in this manner, it would be easy to show that deeds and records are a very uncertain species of assurance, and that the best title is liable to be overturned at any time by the false evidence of a witness concerning something alleged to have occurred a generation ago, and in respect to which, if false, it is impossible to show the truth. But if the

rule of law, as is supposed, is clearly settled against the judge's ruling, I concede that we must accept and follow it.

I have looked into the cases supposed to establish such a rule, and find many in which it is said in general terms that the declarations of a grantor made before his conveyance, or before he had surrendered possession under it, and in disparagement of his title, may be received against those claiming in privity with him as grantees, heirs, etc. But an examination of the cases will show, I think, that not more than one or two go to the extent here claimed.

In a considerable proportion of the cases the declarations were received for the purpose of establishing boundaries. But that case is a well understood exception to the general rule excluding hearsay evidence. It was said by Justice M'Lean in *Boardman v. Reed*, 6 Pet., 328, 341, "That boundaries may be proved by hearsay testimony, is a rule well settled; and the necessity or propriety of which is not now questioned. Some difference of opinion may exist as to the application of this rule, but there can be none as to its legal force. Landmarks are frequently formed of perishable materials, which pass away with the generation in which they are made. By the improvement of the country, and from other causes, they are often destroyed. It is therefore important, in many cases, that hearsay or reputation should be received to establish ancient boundaries." See also *Maddison v. Nuttall*, 6 Bing., 226; *Woolway v. Rowe*, 1 Ad. & El., 114; *Pike v. Hayes*, 14 N. H., 19; *Smith v. Powers*, 15 N. H., 546; *Hobbs v. Cram*, 22 N. H., 130; *Smith v. Forrest*, 49 N. H., 230; *Beecher v. Parmele*, 9 Vt., 352; *Caufman v. Congregation etc.*, 6 Binn., 62; *Dawson v. Mills*, 32 Penn. St., 302; *Sasser v. Herring*, 3 Dev., 342; *Cansler v. Fite*, 5 Jones (N. C.), 424; *Daggett v. Shaw*, 5 Met., 223; *Coyle v. Cleary*, 116 Mass., 208. This court recognized this doctrine in *Bower v. Earl*, 18 Mich., 367, and I do not question the correctness of the decision.

Another class of cases is where the declarations relate to matters of public concern,—as in *Doe v. Cole*, 6 C. & P., 359, and *Carr v. Mostyn*, 5 Exch., 69,—or to facts which depending on oral evidence or acts *in pais* for their establishment, are allowed to be disproved by declarations in the nature of disclaimers, as in *Walker v. Broadstock*, 1 Esp., 458, where the controversy related to a right of common *pur cause de vicinage*. There are also many cases in which evidence of declarations by an occupant of land that he held as tenant or otherwise under some other party has been received. In such cases the documentary evidence of title is not assailed, and the fact proved might be disproved by similar evidence. See *Davies v. Pierce*, 2 T. R., 53; *Pitts v. Wilder*, 1 N. Y., 525; *Bartlet v. Delprat*, 4 Mass., 702, 707; *Price v. Branch Bank*, 17 Ala., 374; *Regina v. Birmingham*, 1 B. & S., 763; *Regina v. Governors etc. of Exeter*, L. R. 4 Q. B., 341. In *West Cambridge v. Lexington*, 2 Pick., 536, declarations that a party had no deed were received to rebut the evidence of title derived from long possession. The propriety of this is manifest, as possession unaccompanied with a claim of right can never ripen into a title. In *Blake v. Everett*, 1 Allen, 248, the declarations of a former owner of lands were received to show the use of a way across them; this evidence not calling in question the legal title. Such evidence would be supported on the same ground as that which would establish tenancy or disprove a claim to adverse possession.

The case of *Norton v. Pettibone*, 7 Conn., 319, is an authority for the plaintiff. The facts are sufficiently like those in the present case to make it analogous, and the ruling was that the declarations were admissible. The point was supposed to be settled by the following cases: *Walker v. Broadstock*, 1 Esp., 458; *Davies v. Pierce*, 2 T. R., 53; *Waring v. Warren*, 1 Johns., 340; *Jackson v. Bard*, 4 Johns., 230; *Jackson v. M'Call*, 10 Johns., 377, and *Beers v. Hawley*, 2 Conn., 467. The first two of these I have already noticed and found them clearly distin-

.guishable. *Waring v. Warren* has no relevancy, and the court was probably misled by an unwarranted deduction of the reporter in his head note. In *Beers v. Hawley*, a party was allowed to defeat the apparent priority by the record of one mortgage over another by the oral declaration of a prior owner of the former, made while he owned it. However correct that may have been under Connecticut statutes, I take it that rights of *bona fide* purchasers under our recording laws could not be affected in that manner. They have a right to rely upon the record as showing the exact facts unless they personally have notice to the contrary. The New York cases require more attention, as I think it very clear that they afford no support to *Norton v. Pettibone*.

In *Jackson v. Bard,* 4 Johns., 230, the declaration of one formerly in possession, that he held under an agreement of purchase, was received against one claiming under him. The decision was made in reliance upon *Walker v. Broadstock* and *Davies v. Pierce*, and is supportable on the same grounds. The question involved was one of adverse possession, which may always be shown or disproved by oral declarations. *Jackson v. M'Call*, 10 Johns., 377, was a case in which declarations were received on a question of boundary. It is thus perceived that *Norton v. Pettibone*, in the cases referred to in the opinion, attempts to base a general rule on those which are recognized exceptions. In *Jackson v. Kisselbrack*, 10 Johns., 336, parol evidence offered to prove a disclaimer by a tenant after a written demise had been proved, was rejected. In *Jackson v. Cole*, 4 Cow., 587, 593, the previous New York cases are explained by Sutherland, J., and I deem it proper to transcribe what he says. Speaking of the cases in which parol acknowledgments as to the title of real estate have been held admissible, he says: "I think it will be found, in all those cases, either that a title had been previously made out, which it was sought to divest by the parol admissions, contrary to the provisions of the statute of frauds, or it appeared from

the acknowledgments themselves that there had been written conveyances, and that the admissions, therefore, were not the best evidence that existed in the case. Thus, in *Jackson v. Vosburgh*, 7 Johns., 186, after the plaintiff had established his title, the defendant offered to prove a parol disclaimer, by the lessors of the plaintiff, of any right to the premises. So in *Jackson v. Kisselbrack*, 10 Johns., 336, the defendant claimed title under an agreement between him and the lessor of the plaintiff, which was held to amount to a lease or present demise. He also proved the payment of rent. The plaintiff then offered to show that the defendant had disclaimed holding under him, and had expressly denied his title. The court say, if an interest passed to the defendant by the agreement, no subsequent disclaimer by parol can abrogate it; for a freehold interest cannot be divested by words *in pais*. In *Brant v. Livermore*, 10 Johns., 358, after the lessors of the plaintiff had established their title to the premises in question, the defendant offered to show, that two of the lessors, since the commencement of the suit, had disclaimed all interest or ownership in the land. The court say parol evidence of a disclaimer to a title to real property, *otherwise valid*, is inadmissible. So in *Jackson v. Cary*, 16 Johns., 302, the defendant had established a clear legal title; and it was attempted on the part of the plaintiff to show that she had repeatedly admitted that she had only a life estate, and that the grantor of the plaintiff had a right to convey the fee subject to her life estate. Ch. J. Spencer says, the parol declarations made by the defendant avail nothing; for, though parol declarations of tenancy have been received, with certain qualifications, parol proof has never yet been admitted to destroy or take away a title. In *Jackson v. Shearman*, 6 Johns., 19, it appeared from parol admissions that there had been a written conveyance; and the court excluded the parol proof, saying that the extent of the title transferred, etc., rested upon higher evidence than upon parol proof of acknowl-

edgment by the party. It rested upon the written assignment of the lease. But where the party in possession has not established a legal title, his declarations, and the declarations of those under whom he claims, as to the nature and extent of their interest, or as to the right of the plaintiffs, have repeatedly been received in evidence. Thus in *Jackson v. Bard*, 4 Johns., 230, declarations of a party under whom the defendant claimed, showing a distrust of his own right, and an admission of the title of the plaintiff, were held admissible. So also in *Jackson v. Belknap*, 12 Johns., 96, and in *Jackson v. M'Vey*, 18 Johns., 330, the defendant was allowed to give evidence of the declarations of one of the lessors, to show under what title he held."

I do not deem it necessary to follow the New York cases further, except to notice three or four upon which some reliance is placed. *Vrooman v. King*, 36 N. Y., 477, goes no further than to decide that the declarations of a grantor after he has sold the land, but before surrendering possession, are not evidence against his grantee; for which I think good reasons are assigned. *Crippen v. Morss*, 49 N. Y., 63, decides only that declarations of one of several tenants in common in a water power, made in the presence of the others, as to the height to which another was entitled to keep up his dam, might be received against one claiming under any of them. The principle involved here was the same as in the case of disputed boundaries. In *Newlin v. Lyon*, 49 N. Y., 661, the declarations which were received related to personal property, but what they were the case does not inform us. In *Padgett v. Lawrence*, 10 Paige, 170, it was sought to establish a resulting trust by the declarations of a former owner; and they were held admissible, but not sufficient. Such evidence, it is almost needless to say, could not be received under our statutes. None of these cases, in my view, qualify the doctrine of the earlier New York cases, and I think the court well say, in *Jackson v. Vosburgh*, 7 Johns., 186, 188, where a parol

disclaimer of title to real property was offered, that "such evidence, if admissible, would lead to fraud and perjury, and be destructive of title to property."

In addition to the Massachusetts cases already referred to, the following decided in that State and elsewhere are also relied upon: *Bridge v. Eggleston*, 14 Mass., 245, where the grantee in a deed was party to the suit, and the other party sought to show that the deed was fraudulent as to the creditors of the grantor. To show this it was held competent to prove the acts and declarations of both the grantor and the grantee; a ruling that in no way affects the question involved in this suit. In *Pickering v. Reynolds*, 119 Mass., 111, the question was which of two persons of the same name, father and son, was grantee in a certain deed; and the father's declarations that he was working on the land for his son, whose money had bought it, were received against one who claimed on an execution sale against the father. These declarations were not to overthrow a documentary title, but to identify a party. The only support which *Noyes v. Morrill*, 108 Mass., 396, can bring to the plaintiff must be derived from the following dictum in the opinion: "The declarations of a former owner are admissible to qualify or disparage his title to the exclusive use and occupation of the estate which he holds;"—a declaration which is perfectly true in many cases, but the limits to which the court in that case was not called upon to define. *Tipton's Lessee v. Ross*, 10 Ohio, 273, only decides that the declarations of the grantor are competent evidence against him and his heirs to prove the delivery of a deed the execution of which was admitted;—a proposition too plain for dispute. *Walcott v. Keith*, 22 N. H., 196, involved only a question of right to personalty, and the declarations were in the nature of admissions that the declarant had disposed of his interest. There are many cases of that sort, and the difference between receiving declarations to overthrow a title by deed, and a title where no deed or other writ-

ing is needful, is apparent. In the latter case the title may rest in parol; in the former the policy of the law forbids it.

It was not claimed that either Tuttle or Benjamin Knowles was deceased previous to the trial, and the case is consequently relieved of any question that might be raised concerning the admissibility of declarations made by parties since deceased. Counsel expressly disclaimed offering the evidence as any part of the *res gestæ*, so that the naked question remains whether the mere connection of these persons with the title is of itself sufficient to justify receiving their declarations to overthrow their conveyances after the title has passed from both. I agree with Mr. Wharton on this point, that "the better view is to restrict the admissibility of declarations of living predecessors, in suits against strangers, to cases where such declarations are a part of the *res gestæ.*" Whart. on Ev., § 1156.